Kathleen BURKE, Plaintiff,

v.

**NEW YORK CITY POLICE DEPARTMENT, et al.,**
**Defendants.**

**No. 86 Civ. 3116 (DNE).**

United States District Court,
S.D. New York.

March 26, 1987.

Rosemary Carroll, Kliegerman & Friess, New York City, for plaintiff.

Deborah L. Zoland, P.C., Robert J. Knightly, Robin Binder, Asst. Corp. Counsel for City of New York, New York City, Andrew Fallek, Joseph Fallek, P.C., Brooklyn, N.Y., for defendants.

MICHAEL H. DOLINGER, United States Magistrate:

Plaintiff Kathleen Burke, a detective in the New York City Police Department, is suing the Department and a number of its officers on claims that are said to arise under both 42 U.S.C. § 1983 and Title VII and of the Civil Rights Act, 42 U.S.C. § 2000e–5 *et seq.* Specifically, she claims that she was subjected to gender based discrimination in work conditions and harassment by her immediate supervisors, that their actions were approved or acquiesced in by higher ranking department officials, and that she was denied fair and impartial consideration of her administrative complaints with respect to this treatment.

The Department has now moved for a protective order to block the production of various categories of documents sought by plaintiff. For the reasons that follow, the motion is granted in part and denied in part.

*The Documents in Dispute*

The documents in dispute come within several categories. One consists of the department performance evaluations of four of the individual defendants for the relevant time period. Defendants resist production on the grounds of irrelevance and a privilege said to be established by section 50–a of the New York Civil Rights Law.

A second category encompasses the so-called Command Discipline Log for 1985 for the Major Case Squad, which was the unit to which plaintiff was assigned at the time of the alleged misconduct. Defendants again invoke a section 50–a privilege claim and also argue that the log is irrelevant to the issues in this case.

A third category of documents pertains to a disciplinary investigation of a Det. John Gaspar, who for a time served as plaintiff's partner on the Major Crimes Squad. In opposing disclosure of these documents, defendants assert again section 50–a, as well as a more general claim of privilege for an assertedly confidential internal department investigation, and they also argue that the documents in question are not relevant to plaintiff's claims.

The fourth category involves documents from the investigatory file of the Department's Office of Equal Employment Opportunity concerning plaintiff's administrative complaints. Some of these documents have been turned over to plaintiff, but the Department resists disclosure of several types of documents. One is a series of lists of questions that were to be posed to the officers interviewed by OEEO during the investigation of plaintiff's complaint. A second item consists of tape recordings of the interview conducted by OEEO. A third group of documents is a set of interview summaries prepared by the investigating officer. A fourth category consisted of entries in the so-called "case progress/activity report" concerning information received from sources other than plaintiff. The fifth, and last, group of documents encompasses assertedly predecisional recommendations in the form of a memorandum from the investigating officer, a report by the Deputy Commissioner to the Commissioner and a memorandum from the Commissioner to the Department Advocate's Office concerning OEEO's recommendation.

The various EEO documents are being withheld on a variety of grounds. Principally defendants invoke the so-called agency deliberative privilege (or a variant referred to as the self-critical analysis privilege) to cover the assertedly evaluative

memoranda prepared to summarize the results of the investigation and to recommend a disposition of plaintiff's charges. As for the other documents—principally the interview materials—the Department invokes a form of executive privilege, claiming that the OEEO investigation, and particularly the interviews, depend upon promises of confidentiality to interviewed officers, and that plaintiff can obtain the same information by deposing the officers who had been interviewed.

*Analysis*

■ Since defendants seek to resist production, they bear the burden of establishing the facts on which their asserted privileges depend. *See, e.g., Von Bulow v. Von Bulow,* 811 F.2d 136, 144–45 (2d Cir. 1987); *In re Grand Jury Subpoena Dated January 4, 1984,* 750 F.2d 223, 224 (2d Cir.1984). Similarly, to the extent that they rely upon a claim of lack of relevance, they must satisfy the court that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed.R.Civ.P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure, particularly in actions under Title VII, *see, e.g., Trevino v. Celanese Corp.,* 701 F.2d 397, 405–06 (5th Cir.1983), and in suits asserting violations of constitutional rights. *See, e.g., Inmates of Unit 14 v. Rebideau,* 102 F.R.D. 122, 128 (N.D.N.Y.1984); *Lora v. Board of Educ. of New York,* 74 F.R.D. 565, 579 (E.D.N.Y. 1977); *Rios v. Read,* 73 F.R.D. 589, 602 (E.D.N.Y.1977).

Bearing these general considerations in mind, I turn to each of the categories of documents at issue on the present motion.

### 1. *Performance Evaluations*

Plaintiff has sought the performance evaluations of four individual defendants, all of whom she asserts held supervisory authority over her. Of the four, one—Det.

Stiastny—is alleged to have been responsible for the harassment and discrimination, and the other three allegedly acquiesced in that misconduct despite plaintiff's complaints. Apparently plaintiff's principal asserted need for this documentation is to assist her claim that the Department, through its more senior officials, acquiesced in the alleged misconduct of Sgt. Stiastny and his immediate supervisors by giving them good performance evaluations despite their asserted misconduct. Alternatively, it might be posited that if the evaluations reflected prior misconduct, then those officers' career success reflects the Department's indifference to or approval of their misconduct.

In opposing production, the Department asserts that the evaluations are irrelevant, principally because they reflect no problems of the sort alleged by plaintiff,[1] and, alternatively, that their production is precluded by New York Civil Rights Law § 50–a. I find, on the present record, that the Department's relevance argument has merit except with respect to a portion of the records relating to Sgt. Stiastny.

Section 50–a of the New York Civil Rights Law provides, in substance, that police "personnel records," including performance evaluations, are not to be disclosed except by consent of the individual or pursuant to court order. The statute also provides for *in camera* judicial review of the documents, prior to disclosure, to determine whether they are "relevant and material in the action before" the court.

As a state-law privilege, the statute does not directly apply to this action, which is premised upon federal law claims. *See* Fed.R.Evid. 501. *Compare, e.g., American Civil Liberties Union of Mississippi v. Finch,* 638 F.2d 1336, 1342 (5th Cir.1981); *Socialist Workers Party v. Grubisic,* 619 F.2d 641, 643 (7th Cir.1980), *with Somer v. Johnson,* 704 F.2d 1473, 1478–79 (11th Cir.

---

**1.** Defendants make this argument in an *ex parte* letter to the Court. The fact that the documents do not contain such references is surely not appropriately deemed confidential. Indeed, the absence of such discussion would, in itself, be significant in some contexts.

1983).[2]  Nonetheless, in determining the scope and substance of privileges under federal common law, the courts have suggested that, to the extent feasible, some weight should be given to strong statutory policies of confidentiality.  *See, e.g., Von Bulow v. Von Bulow, supra,* 811 F.2d at 144; *Socialist Workers Party v. Grubisic, supra,* 619 F.2d at 643–44; *Burka v. New York City Transit Authority,* 110 F.R.D. 660, 664 (S.D.N.Y.1986); *Lora v. Board of Educ., supra,* 74 F.R.D. at 576.  The limitation of this principle is evident, however, in the courts' repeated recognition that ordinarily the overriding policy is one of disclosure of relevant information in the interest of promoting the search for truth in a federal question case.  *See, e.g., Von Bulow v. Von Bulow, supra,* 811 F.2d at 141–42; *American Civil Liberties Union of Mississippi v. Finch, supra,* 638 F.2d at 1343–44; *Burka v. New York City Transit Authority, supra,* 110 F.R.D. at 666; *Inmates of Unit 14 v. Rebideau, supra,* 102 F.R.D. at 128.

■  In this case there appears to be no irremediable conflict between state and federal policies.  To the extent that section 50–a of the Civil Rights Law may embody a policy of protecting the internal deliberative process of its law enforcement agencies, that policy is reflected in federal law.  *See, e.g., Gillman v. United States,* 53 F.R.D. 316, 318 (S.D.N.Y.1971).  Moreover, to the extent that the state provision may be construed as seeking to protect the privacy of government personnel, it finds an analogue in federal law.  For example, federal statutes recognize in several comparable contexts an interest in personal privacy, including the privacy of government employees.  *See, e.g.,* The Privacy Act, 5 U.S.C. § 552a; The Freedom of Information Act, 5 U.S.C. §§ 552(b)(6) (excepting from public disclosure all "personnel and medical files ... the disclosure of which would constitute a clearly unwarranted invasion of personal privacy") and

§ 552(b)(7)(C) (barring disclosure of law enforcement files the disclosure of which would "constitute an unwarranted invasion of personal privacy").

■  By the same token, neither state nor federal law contemplates denial to a litigant of information from personnel files or other documents if that information is necessary to the party's preparation of his case, even if the material may reveal matters that could cause embarrassment or other possible harm to another party, or even to a non-party.  Thus, section 50–a of the Civil Rights Law provides by its own terms for disclosure of personnel files that are "relevant and material" to a pending civil action.  *See, e.g., Wunsch v. City of Rochester,* 108 Misc.2d 854, 858, 860, 438 N.Y. S.2d 896, 901 (Sup.Ct.1981); *In re Cleve C.,* 101 Misc.2d 608, 610, 421 N.Y.S.2d 814, 815 (Family Ct.1979).

Similarly, the federal courts have repeatedly recognized the necessity for disclosure of such files in a variety of circumstances.  *See, e.g., Weahkee v. Norton,* 621 F.2d 1080, 1082 (10th Cir.1980) (reversing district court denial of access to EEOC personnel records in Title VII suit); *Fears v. Burris Mfg. Co.,* 436 F.2d 1357, 1360–61 (5th Cir.1971) (requiring production of records of state employment office in Title VII action); *Carr v. Monroe Mfg. Co.,* 431 F.2d 384, 387–90 (5th Cir.1970), *cert. denied,* 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971) (similar facts); *Burka v. New York City Transit Authority, supra,* 110 F.R.D. at 666–68 (personnel records of Transit Authority employees); *Inmates of Unit 14 v. Rebideau, supra,* 102 F.R.D. at 128–29 (personnel records of prison guards); *Renshaw v. Ravert,* 82 F.R.D. 361, 363 (E.D.Pa.1979) (ordering disclosure of portions of personnel file of defendant police officer).  *Cf. Frankenhauser v. Rizzo,* 59 F.R.D. 339, 341–46 (E.D.Pa.1973); *Gaison v. Scott,* 59 F.R.D. 347, 351–53

**2.**  Even if the state law of privilege were applicable here, the provisions of section 50–a that concern procedures an burdens of proof would be inapplicable since those matters are in any

event to be determined by reference to federal law.  *See, e.g., Dixon v. 80 Pine Street Corp.,* 516 F.2d 1278, 1280 (2d Cir.1975).

(D.Haw.1973); *Wood v. Breier,* 54 F.R.D. 7, 10–13 (E.D.Wisc.1972).

■ These decisions demonstrate that the appropriateness of production necessarily turns upon a weighing of the competing concerns of relevance and need on the one hand, and considerations of privacy, on the other. In this case, plaintiff has shown sufficient need for a portion of the performance evaluation of Sgt. Stiastny but has not done so with respect to the other three individuals.

Plaintiff's claim against the supervisors of Sgt. Stiastny and against the Department itself turns principally upon whether those defendants either encouraged or acquiesced in the alleged wrongful conduct of the Sergeant in dealing with plaintiff. One potential source for such information is found in the performance evaluations. Although defendants argue that the evaluations are irrelevant because they do not reflect any improper conduct by Stiastny and thus would not have given notice of such a problem to his supervisors, this reasoning is misconceived. If a police employee is guilty of the type of misconduct charged here—whether an isolated incident or part of a pattern—it is fair to assume that the departmental evaluations will reflect some criticism of the individual. Indeed the forms utilized by the Department contain categories that are precisely responsive to such issues, including those labelled "EVALUATION SKILL," "HUMAN RELATIONS–IMPARTIALITY," and "JUDGMENT–DECISION MAKING."

■ Plaintiff apparently made repeated complaints to Stiastny's superiors about his conduct and he was in fact subject to a reprimand for his treatment of plaintiff. Under these circumstances the absence of any critical evaluation of him by his supervisors during the relevant time period may be probative of whether they either acquiesced in or encouraged such behavior, although it would presumably not be dispositive. *See, e.g., Turpin v. Mailet,* 619 F.2d 196, 200–01 (2d Cir.), *cert. denied sub nom. Turpin v. West Haven,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

This is sufficient to justify production of the evaluation reports for the period during which plaintiff was a member of the Major Crime Squad.

■ There is no equivalent justification for the production of the other performance evaluations at the present time. Plaintiff has not suggested that any of the other individuals were involved in prior incidents suggestive of gender-based or other bias, and the evaluations reflect none. Under these circumstances, plaintiff may be entitled to know that the evaluations do not reflect such incidents or any criticism for such discriminatory tendencies or conduct, but there is no reason to breach the understandable policy of confidentiality for such records on the present showing. Should further discovery bring to light any evidence of prior misconduct by any of these individuals, plaintiff may renew her request for such documents.

### 2. *The Command Discipline Log*

■ Plaintiff seeks the 1985 Command Discipline Log for the Major Case Squad. A review of that log discloses that none of the individuals identified in it were cited for conduct that was related in any way to the events involved in this lawsuit. Accordingly, the document appears, at present, to be beyond even the liberal scope of relevance defined by Rule 26(b)(1).

### 3. *Documents Relating to an Investigation of Det. Gaspar*

■ Plaintiff has sought both command discipline documents and investigatory files pertaining to a Departmental inquiry concerning her partner, Dep. John Gaspar. She seeks the discovery based upon her suspicion that the investigation itself was retaliation for Gaspar's stated willingness to work with her. To overcome any privacy concerns, plaintiff proffers in support of her request a release signed by Det. Gaspar authorizing the disclosure of such records to plaintiff.

Insofar as the disputed records reflect an investigation of Gaspar at a time when he

was allegedly involved in a controversy within the Major Case Squad, the documents may be relevant in the sense that they may lead to the discovery of relevant information; for example, they may assist counsel in determining whether the investigation was triggered by someone within the Major Case Squad, thus opening up the possibility of an inference of retaliatory intent. Although the Department's trial counsel represents that the investigation was not triggered in this manner,[3] this is a question better resolved by pre-trial discovery and, if appropriate, by the presentation of evidence.

Although the relevance of these documents is somewhat marginal since they involve a collateral issue and on their face do not obviously support plaintiff's factual theory, they come within the broad ambit of Rule 26(b)(1), subject to the Department's claim of privilege. The difficulty with that claim is that it is entirely unspecific. The Department's counsel of record in this case simply states in conclusory fashion that the documents "are privileged because they were prepared during a confidential internal investigation." (Affidavit of Assistant Corporation Counsel Robin Binder, sworn to Dec. 24, 1986, at ¶ 13.)

Wholly apart from questions about the competency of the testimony proffered by the Assistant Corporation Counsel, her assertion is entirely unilluminating as to the pertinent facts. There is no recitation as to what assurances of confidentiality, if any, were provided to persons interviewed; whether the documents or the information they contain were or were not disseminated beyond the individuals immediately responsible for the investigation, and, if so, to whom and why; and what harm, if any, could reasonably be anticipated to flow from disclosure in this case to plaintiff, whether with or without a protective order. Finally, I note as well that defendant fails to cite, either in its memorandum or in counsel's letter accompanying the documents, any legal authority for the proposition that these types of documents are subject to a privilege when the subject of the investigation consents to release of the file.

Since the Department bears the burden of proving the specific facts on which its privilege claim is premised, *see, e.g., Von Bulow v. Von Bulow, supra,* 811 F.2d at 144–45; *In re Horowitz,* 482 F.2d 72, 82 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973), the privilege claim cannot be said to have been established on the present record. Nonetheless, in view of the limited relevance of this line of inquiry and the content of the documents, I conclude that, at least at present, defendant need produce only the report dated December 10, 1984, with its "3rd Endorsement," and that that document may be redacted to delete both the name of the other officer investigated, since he has not consented to the release of the documents, and the name of the confidential informant.

### 4. THE OEEO Documents

As noted, the Department has withheld a number of documents relating to the OEEO investigation of plaintiff's discrimination complaint. The principal dispute appears to concern the summaries and tapes of 24 interviews conducted by the investigator, assertedly pursuant to the procedures specified by Patrol Guide 118–9. In addition, the Department seeks to protect the investigator's lists of questions, portions of his case progress activity report, his report to the OEEO commanding officer summarizing the results of his investigation and his recommended disposition, a memorandum from the Deputy Commissioner for Employment Opportunity to the Police Commissioner similarly reporting on the investigation and recommending a disposition, and a covering memorandum from the Commissioner to the Department Advocate's Office. Defendants' objections to production are sustainable only in part.

#### a. The Interview Materials

With respect to the interview tapes and interview summaries, the Department ar-

---

**3.** My *in camera* review of the documents suggests that the source was probably not within the Squad, but this is not definitively established by them.

gues a form of executive privilege, asserting that they were generated pursuant to the so-called GO–15 procedure for investigating allegations of officer misconduct, and that this procedure depends upon assurances of confidentiality given to those individuals who are interviewed. (*See generally* Affidavit of Deputy Commissioner Robert Goldman, sworn to December 24, 1986, at ¶¶ 3–15.) While the Department concedes that the weighing of this asserted privilege requires a balancing of the discovering party's need for the material against the harm of disclosure, it asserts that absolute confidentiality is necessary to ensure the effectiveness of internal Department investigations and that plaintiff has little need for the tapes and summaries since she has been provided the names of those officers who were interviewed and can depose them.

There are several problems with defendant's argument. A significant element of plaintiff's case is her claim that the Department and its senior supervisors acquiesced in or encouraged the type of gender-based discrimination allegedly carried out in her case by Sgt. Stiastny.[4] A central element of this claim is her charge that the Department's OEEO investigative mechanism serves to whitewash such conduct. Specifically she claims that her administrative complaint was deliberately downplayed and, in significant part, rejected by defendant Sanchez—the Deputy Commissioner in charge of OEEO—because the Department refuses to enforce a non-discrimination policy.

In this context, the manner in which the investigation was carried out is plainly of central significance to plaintiff's claim against the supervisory and Departmental defendants. What was asked in the interviews and what answers were given will reflect the degree to which a good faith investigation was carried out and may suggest whether the ultimate and partially adverse disposition of plaintiff's complaint was based on the evidence obtained or on an unspoken policy not to enforce EEO requirements. *Cf. Fiacco v. City of Rensalaer, New York*, 783 F.2d 319, 327–28 (2d Cir.1986).

Under these circumstances, it is fair to say that plaintiff has demonstrated a fairly pressing need for the interview materials. Although she may depose the officers, it is altogether unlikely that they will be able to recall with any degree of precision what they were asked and what they told the interviewer more than two years ago. *See, e.g., Frankenhauser v. Rizzo, supra*, 59 F.R.D. at 345 (quoting *United States v. Murphy Cook & Co.*, 52 F.R.D. 363, 365 (E.D.Pa.1971)). Moreover, the nuances of these questions and answers—which cannot reasonably be expected to be obtained now by deposition—could well be critical to determining whether there is any basis for plaintiff's claim of a departmental policy against enforcement of anti-discrimination requirements.

As for the Department's claimed need for confidentiality, it does not appear especially compelling in the particular circumstances of this case. It bears emphasis that the courts have generally been unreceptive to claims of this kind in the context of private citizen suits brought under the federal civil rights laws. As then-District Judge Pratt has cogently observed:

> If defendants are saying that police officers are more likely to be untruthful if they know potential plaintiffs might receive their reports than they ordinarily are when they are faced with possible departmental disciplinary action, the court does not accept their argument. The court recognizes that police department self-evaluation and remedial action do serve an important police policy, but such policy will not be hindered by the

---

**4.** Under 42 U.S.C. § 1983, supervisory liability depends upon whether the supervisor encouraged or acquiesced in the complained-of misconduct, *see, e.g., Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986), and municipal liability turns upon whether the misconduct is attributable to an authorized, if *de facto*, government policy or practice. *See, e.g., Turpin v. Mailet, supra*, 619 F.2d at 201. *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436–37, 85 L.Ed.2d 791 (1985).

disclosure ordered here. On the contrary, limited disclosure can only further this policy. These investigations are conducted, at taxpayer expense, to determine whether the procedures of the department or individual police officers were responsible for the complained-of incident, and whether disciplinary or other remedial action is necessary to prevent the recurrence of similar incidents. No legitimate purpose is served by conducting the investigations under a veil of near-total secrecy. Rather, knowledge that a limited number of persons, as well as a state or federal court, may examine the file in the event of civil litigation may serve to insure that these investigations are carried out in an even-handed fashion, that the statements are carefully and accurately taken, and that the true facts come to light, whether they reflect favorably or unfavorably on the individual police officers involved or on the department as a whole. The claim of executive privilege is therefore rejected.

*Mercy v. County of Suffolk*, 93 F.R.D. 520, 522 (E.D.N.Y.1982). Based on this type of reasoning, the federal courts have generally required production, both in cases when the adequacy of the internal investigation was in itself at issue and in cases where it was not. *See, e.g., Urseth v. City of Dayton*, 110 F.R.D. 245, 252–54 (S.D.Ohio 1986); *Spell v. McDaniel*, 591 F.Supp. 1090, 1115–19 (E.D.N.C.1984); *Dykes v. Morris*, 85 F.R.D. 373, 375–76 (N.D.Ill. 1980); *Crawford v. Dominic*, 469 F.Supp. 260, 262–63 & n. 2 (E.D.Pa.1979); *Culp v. Devlin*, 78 F.R.D. 136, 140–41 (E.D.Pa. 1978); *Boyd v. Gullett*, 64 F.R.D. 169, 174–79 (D.Md.1974); *Dos Santos v. O'Neill*, 62 F.R.D. 448, 451 (E.D.Pa.1974); *Gaison v. Scott*, 59 F.R.D. 347, 349–51 (D.Haw.1973); *Frankenhauser v. Rizzo, supra,* 59 F.R.D. at 342–45; *Wood v. Breier, supra,* 54 F.R.D. at 12–13.

The generally accepted criteria for evaluating the competing interests in these types of cases were elaborated by Judge Becker in *Frankenhauser, see* 59 F.R.D. at 344 (quoted with approval in *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738

F.2d 1336, 1342–43 (D.C.Cir.1984)), and they suggest that disclosure is appropriate in this case. The key consideration is "[t]he importance of the information sought to the plaintiff's case," *Urseth v. City of Dayton, supra,* 110 F.R.D. at 253, and in this instance the information is, as already noted, quite significant to the plaintiff's claims of supervisory and municipal liability. Indeed, the importance of this evidence is underscored by a recent decision by the Second Circuit on the issue of municipal liability under section 1983, which turned upon a detailed evaluation of the city police department's handling of misconduct complaints made by citizens other than the plaintiff. *See Fiacco v. City of Rensselaer, New York, supra,* 783 F.2d at 327–32.

As for the other *Frankenhauser* criteria, they also appear to favor disclosure. As noted, the harm envisaged by the Department to its ability to conduct internal investigations is, at best, quite speculative. Moreover, since the interviewed officers' names have already been disclosed, there is no danger that disclosure of their names in the documents would have an "impact" upon them. Furthermore, the interview tapes and summaries are factual rather than evaluative. In addition, plaintiff is not a defendant, or a prospective defendant, in a criminal prosecution; the police investigation has been completed, as has the intra-departmental disciplinary proceeding; this suit is not frivolous or brought in bad faith; and it is doubtful that the full scope of the information sought would be available from other sources.

In resisting this conclusion, the Department relies principally upon Judge Weinfeld's decision in *Brown v. Matias,* 102 F.R.D. 580 (S.D.N.Y.1984). That reliance appears to be misplaced.

The court in *Brown* relied principally upon the fact that GO–15 statements are taken only after a grant of use immunity and an assurance to the officer that his statement will be kept confidential. This treatment appears to be applicable, how-

ever, only to cases in which criminal charges have or may be brought. Indeed, the Patrol Guide annexed to the affidavit of Deputy Commissioner Goldman appears quite specific on this point, since it only provides for immunity and an assurance of confidentiality.

> [i]f a member of the service . . . is under arrest or is the subject of a criminal investigation or there is a likelihood that criminal charges may result from the investigation.

(Goldman Aff. at Exh. E., p. 3.)

In *Brown* the alleged misconduct involved an assault by police officers against the plaintiff, a context in which the potential for criminal prosecution would obviously trigger the confidentiality provision of the pertinent Patrol Guide. In this case, however, the allegation of discriminatory treatment involves no such threat, and it is thus fair to conclude that the Patrol Guide does not authorize a promise of confidentiality and that such promises were not made here.[5] In any event, promises of confidentiality cannot be binding in the absence of legal authority, *see, e.g., Clavir v. United States,* 84 F.R.D. 612, 614 (S.D.N.Y.1979), and where, as here, there is adequate justification for production, such promises would have to be disregarded.

Finally, I note that there is no indication in *Brown* that the plaintiff was challenging the *bona fides* of the internal investigation, and thus the need for the statements may well have been less compelling than in this case.

In sum, a proper weighing of the pertinent policies demonstrates that the OEEO statements and summaries should be produced. Similarly, the investigators' lists of questions are discoverable since they are plainly relevant to the scope of the inquiry that was undertaken and are not even protected by an articulated governmental privilege. As for what are described as the investigators' notes, they are for the most part illegible, and, to the extent that they can be deciphered, they add no useful information and therefore need not be produced. Finally, the bulk of the withheld portions of the Case Progress/Activity Report are irrelevant to the claims in this action. The only pertinent items are two omitted paragraphs under "09–24 0800," and the omitted paragraphs under "01–31 0900" and "02–07 0930." Those entries must be produced since they are relevant and not subject to a compelling confidentiality interest of the Department.

### b. *The Three Memoranda*

The Department has also withheld three internal memoranda concerning the OEEO investigation, on the theory that they are protected as "non-final evaluative material." (Binder Aff. at ¶ 20.) A review of these documents demonstrates that they are producible in part.

### A. *The Pre-decisional Deliberative Privilege*

#### 1. *Governing Standards*

Defendants invoke what has been referred to in various contexts as a public information privilege, an executive privilege or a pre-decisional deliberative privilege. As encapsulated in Supreme Court Standard 509, "[t]he government has a privilege to refuse to give evidence . . . upon a showing of reasonable likelihood of danger that the evidence will disclose . . . official information . . .," (Sup.Ct.Stan. 509(b)), which includes "intragovernmental opinions or recommendations submitted for consideration in the performance of decisional or policymaking functions." (Sup. Ct.Stan. 509(a)(2)(A) (quoted in 2 J. Weinstein & M. Berger, *Weinstein's Evidence* at 509–1 (1986).)[6]

---

**5.** The Goldman Affidavit does not state specifically whether such promises were made in this case, and indeed does not suggest that Deputy Commissioner Goldman has any personal knowledge as to what transpired between the OEEO investigator and the officers whom he interviewed.

**6.** The Federal Standards of Evidence embody pre-existing case law and are looked to as reliable guidance notwithstanding the decision of Congress not to include them in the Federal Rules of Evidence. *See, e.g., In re Franklin Nat'l Bank Securities Litigation,* 478 F.Supp. 577, 580 (E.D.N.Y.1979); *United States v. Fatico,* 441

This principle finds its genesis in federal statute, *see* Note, "Discovery of Government Documents and the Official Information Privilege," 76 Colum.L.Rev. 142, 145–56 (1976), but has since become the subject of a broader federal common law. *See generally id.* at 156–57 (*citing Kaiser Aluminum & Chemical Corp. v. United States*, 141 Ct.Cl. 38, 157 F.Supp. 939 (1958)).[7] In essence, the privilege is grounded on the notion "that communications to the government and communications within the government will be stifled unless confidentiality is assured." 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 509[05] at 509–34 to 35 (1986).

This concern flows from

> [t]he assumption that "government, no less than the citizen, needs open but protected channels for the kind of plain talk that is essential to the quality of its functioning." Without frank, confidential discussion between subordinates and their superiors, "crucial decisions may be made with insufficient knowledge or inadequate advice."

*In re Franklin Nat'l Bank Securities Litigation*, 478 F.Supp. 577, 581 (E.D.N.Y. 1979) (*quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 325 (D.D.C.1966), *aff'd on opinion below*, 384 F.2d 379 (D.C.Cir.), *cert. denied*, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967), and Note, "Discovery of Government Documents" at 143). *See also Soucie v. David*, 448 F.2d 1067, 1080–81 (D.C.Cir. 1971) (Wilkey, J., concurring).

The rationale for the privilege also defines its substance and limitations. To demonstrate the applicability of the

privilege,[8] the government must demonstrate that "1) the materials were part of a deliberative process by which policies or decisions are formulated ..., and 2) that the materials were truly of a predecisional, or advisory or recommendatory nature, or expressed an opinion on a legal or policy matter, or otherwise were reflective of a deliberative process." *Mobil Oil Corp. v. Dep't of Energy*, 102 F.R.D. 1, 5 (N.D.N.Y. 1983). Consistent with this definition, the privilege does not apply to "purely factual material" that may be severed from the rest of the document, and it does not apply to "explanations or interpretations of an existing decision." *Id. See, e.g., Environmental Protection Agency v. Mink*, 410 U.S. 73, 87–89, 93 S.Ct. 827, 836–37, 35 L.Ed.2d 119 (1973); *J.R. Norton Co. v. Arizmendi*, 108 F.R.D. 647, 648–49 (S.D. Cal.1985); *Resident Advisory Board v. Rizzo*, 97 F.R.D. 749, 753 (E.D.Pa.1983); *In re Agent Orange Product Liability Litigation*, 97 F.R.D. 427, 434–35 (E.D.N.Y. 1983); *In re Franklin Nat'l Bank Securities Litigation, supra*, 478 F.Supp. at 581–82 (citing cases). *See also Lead Industries Ass'n v. OSHA*, 610 F.2d 70, 82–84 (2d Cir.1979).[9] Similarly it does not apply to recommendations that the agency "chooses *expressly* to adopt or incorporate by reference" in its ultimate decision. *Cliff v. IRS*, 496 F.Supp. 568, 580 (S.D.N.Y.1980) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161, 95 S.Ct. 1504, 1521, 44 L.Ed.2d 29 (1975)) (emphasis in original).

The privilege is not absolute. Thus, even if the proponent of the privilege makes the requisite showing, the court is

---

F.Supp. 1285, 1298 (E.D.N.Y.1977), *rev'd on other gds.*, 579 F.2d 707 (2d Cir.1978).

**7.** In this action plaintiff asserts both federal and state law claims to which the disputed documents may be pertinent. Under these circumstances, Fed.R.Evid. 501 requires the application of federal law to questions of privilege. *See, e.g., First Fed. Savings & Loan Ass'n of Pittsburgh v. Oppenheim, Appel & Dixon*, 110 F.R.D. 557, 560 (S.D.N.Y.1986) (citing cases).

**8.** As the proponent of a privilege, the Department bears the burden of proving the facts

necessary to its invocation. *See, e.g., In re Horowitz*, 482 F.2d 72, 82 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 493–94 n. 3 (S.D.N.Y.1985).

**9.** We recognize, of course, that the distinction between factual and analytical or opinion material may be elusive. *See, e.g., Lead Industries Ass'n v. OSHA, supra*, 610 F.2d at 83; *In re Franklin Nat'l Bank Securities Litigation, supra*, 478 F.Supp. at 482.

nonetheless required to determine whether it should be overridden. *See, e.g., Zinker v. Doty,* 637 F.Supp. 138, 141 (D.Conn. 1986); *Skibo v. City of New York,* 109 F.R.D. 58, 61 (E.D.N.Y.1985); *In re Agent Orange Product Liability Litigation, supra,* 97 F.R.D. at 434; *In re Franklin Nat'l Bank Securities Litigation, supra,* 478 F.Supp. at 582–83. Among the pertinent considerations that may counterbalance the government interest in confidentiality are the needs of the adversary litigant for the information, the societal interest in "accurate judicial fact finding," and, in some cases, the public interest "in opening for scrutiny the government's decision making process." *Id.* at 582. The most commonly cited factors to be considered in this balancing process are found in Chief Judge Weinstein's summation in *In re Franklin Nat'l Bank Securities Litigation:*

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

478 F.Supp. at 583 (citations omitted). *Accord, e.g., Mobil Oil Corp. v. Dep't of Energy, supra,* 102 F.R.D. at 5.

The March 18, 1985 memorandum from the investigating officer to the Commanding Officer of OEEO consists of both purely factual and evaluative discussions. The evaluative portions of the document include the last two paragraphs of the first page and the first three paragraphs of the second page. Although some of this analysis amounts, in substance, to a summary of the interviews, the summarization necessarily involves some characterizations, and the evaluative and factual portions are not segregable.

■ The balance of the document consists of "Findings" and a "Recommenda-

tion." This discussion could be characterized, at least in part, as evaluative, but the five paragraphs appearing on the second page below the word "FINDINGS" are, in essence, factual and are crucial to understanding the basis for the Department's disposition of plaintiff's claim of discrimination in job opportunities. Accordingly, those paragraphs should be produced since they are not deliberative and in any event are centrally relevant to one of the plaintiff's claims in this case.

■ On the third page, the first two paragraphs are also essentially factual in nature and disclose the apparent basis for the decision ultimately reached by the Department on plaintiff's charges. Accordingly, they are of obvious relevance to the issues in this case and should be produced with the exception of the two sentences that contain the officer's recommendation as to a disposition.

As for the last two paragraphs on the third page, the first is purely factual and the second is purely evaluative. Accordingly, the first should be produced, but the second may be withheld.

■ The March 25, 1986 memorandum from the Deputy Commissioner for Equal Opportunity to the Police Commissioner consists of a summary of plaintiff's charges, a set of findings based on the investigation, and a set of recommendations. The description of plaintiff's charges is, of course, entirely factual. As for the findings and recommendations, although they are, for the most part, evaluative in nature, it appears that they were explicitly adopted by the Police Commissioner in his final decision, which was of course provided to plaintiff. (*See* Binder Aff. at Exh. D—"Review by Police Commissioner," dated May 16, 1985.) [10] Accordingly, the findings and recommendations are not protected by the deliberative privilege, *see, e.g., NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 161, 95

---

**10.** The Commission supplemented the recommendation by requiring that the command dis-

cipline be administered personally by the Chief of Operations.

S.Ct. at 1521, and the document must therefore be produced.

Finally, the memorandum of the Police Commissioner is not itself deliberative. Accordingly it should be produced.

### CONCLUSION

For the reasons stated, the defendants' motion for a protective order is granted in part and denied in part. The documents required to be produced are to be made available to plaintiff within ten (10) days of the date of this Memorandum and Order.

SO ORDERED.