**George H. ROBERTS, Plaintiff,**

v.

**Steven HUNT, Michael Dalley, The New York State Housing Finance Agency, Defendants.**

**No. 97–CV–123S(F).**

United States District Court, W.D. New York.

July 6, 1999.

Falk & Seimer, LLP, Buffalo, New York, Stephen F. Szymoniak, of counsel, for plaintiff.

Hitsman, Hoffman & O'Reilly, Elmsford, New York, Lois A. Traub, of counsel, for defendants.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

## JURISDICTION

This matter was referred to the undersigned for all pretrial matters by order of Hon. Richard J. Arcara dated March 31, 1997. It is presently before the court on Plaintiff's motion, filed April 20, 1999, for reconsideration of this court's ruling during an oral deposition on April 15, 1999, to direct non-party witnesses answer questions at a further deposition and extending the time for completion of discovery filed. (Docket Item No. 23).

## BACKGROUND

In this action for age discrimination, Plaintiff seeks to compel answers to questions propounded during a deposition of employees of Defendant, New York State Housing Finance Agency ("the Agency") as non-parties. Specifically, on April 15, 1999, during the course of a deposition of Judith Atzrott, Plaintiff asked Ms. Atzrott about questions put to her by the Agency's in-house counsel during a meeting prior to Plaintiff's termination. Exhibit A to Affidavit of Steven F. Szymoniak, Esq., dated May 12, 1999, ("Doc. # 27") ("Szymoniak Affidavit") at 33. Defendants' counsel objected on the basis of lack of relevancy and deliberative privilege. *Id.* at 34. At that point the undersigned was called by telephone. *Id.* at 35. After hearing the arguments of the parties, the court determined that the question sought information irrelevant to Plaintiff's claim of age discrimination and upheld Defendants' objection to the question.

Although the transcript did not preserve the entire discussion between counsel and the court, Exhibit A to Szymoniak Affidavit, it is undisputed that the purpose of the meeting between Ms. Atzrott and Defendants' counsel was to investigate allegations of sexual harassment involving Plaintiff. The transcript does confirm that the court determined the issue solely on the basis on lack of relevancy and declined to rule on Defendants' alternative contention that the question intruded upon the Agency's deliberative privilege. *Id.* A similar objection arose during the deposition of Ms. Terry Crowe, who was also interviewed by Agency officials, conducted following Ms. Astrott's deposition.

## DISCUSSION

■ Fed.R.Civ.P. 26 permits discovery of information constituting admissible evidence or which is reasonably calculated to lead to the discovery of admissible evidence relevant to the matter and any claim or defense. Information is relevant if it tends to make the fact at issue more probable or less probable than it would be without the evidence. Fed.R.Evid. 401. Here, it is undisputed that Plaintiff's only claim against Defendant is wrongful discharge based on age. Further, there is no dispute that Defendants' defense is that Plaintiff was terminated based on his alleged failure to pass a civil examination required to maintain his employment with the Agency, and that Plaintiff contends such reason is pretextual. Szymoniak Affidavit, ¶¶ 13–14. Plaintiff argues that if Defendants' investigation of allegations of sexual harassment against Plaintiff is established such actions "may attempt to mask [Defendant's] pretextual termination of Plaintiff because of his age." *Id.*, ¶ 8.

However, the court fails to see how Defendants' attempt to investigate allegations of sexual harassment as a possible reason to terminate, assuming that was Defendants' purpose, is probative of the fact that the stated reason for Plaintiff's termination, *i.e.,* Plaintiff's undisputed failure to pass a civil service examination, was pretextual. The fact that the employer also sought to terminate Plaintiff based on sexual harassment allegations does not make it more likely that the actual reason for termination was Plaintiff's age. *See St. Mary's v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (untruth of proffered reason does not establish that real reason for termination was a prohibited one). Plaintiff also does not dispute that the decision to terminate him, based on his failure to pass a civil service examination, was made "long before" the interviews with Ms. Aztrott and Ms. Crowe occurred. Defendants' Memorandum of Law In Opposition to Plaintiff's motion, filed May 26, 1999 ("Doc.# 28") ("Defendants' Memorandum") at 5. The fact that Defendant later investigated, prior to Plaintiff's formal termination, sexual harassment allegations against Plaintiff does not support an inference that he was discharged because of his age. Based on the sequence of events in this case, Defendants could not have known whether there was any grounds for sexual harassment allegations involving Plaintiff until they completed the investigation, including the interviews of Ms. Aztrott and Ms. Crowe at issue in the depositions. Thus, that such interviews were being conducted, well after the decision to terminate Plaintiff, cannot support an inference that Defendant sought to contrive a false reason for the termination constituting evidence that Plaintiff was terminated based on his age.

■ Defendants contend, alternatively, that the questions seek information protected by the deliberative process privilege and a self-evaluative privilege. The deliberative process privilege protects governmental documents which are "pre-decisional" and "deliberative" reflecting subjective opinions and not factual matters. *Grand Central Partnership, Inc. v. Cuomo,* 166 F.3d 473, 482 (2d Cir.1999). Section 43 of the New York Private Housing Finance Law, Defendant New York State Housing Finance Agency is established as a public benefit corporation for the purpose of financing low cost housing within New York state. N.Y. Priv. Hous. Fin.Law § 43 (McKinney 1991). Section 54 of the Private Housing Finance Law declares that the Agency benefits the public health, safety, welfare, comfort and security and "performs an essential governmental function." *Id.,* § 54. As such, the Agency may

assert the deliberative process privilege. If Defendants' relevancy objection are overruled, the court finds the deliberative process privilege does not apply to the conversations at issue. Here, the information sought are the statements made by Ms. Aztrott and Ms. Crowe in response to an alleged investigation of Plaintiff. As such, while the statements appear to be predecisional to a determination as to whether formal actions should be taken, they are not deliberative. Rather, the conversations between the employees of the Agency and Agency investigators regarding suspected violations of the Agency's sexual harassment policy constitute factual material beyond the privilege.

 Further, the court does not agree that a so-called self-evaluative privilege, as asserted by Defendants, is available under federal law. Fed.R.Evid. 501 states that other than as established by the Constitution or Congress privileges in federal court proceedings are determined under the principles of the common law and by reason and experience. The recognition of new privileges in federal court evolves on a case—by—case basis. *See Jaffee v. Redmond,* 518 U.S. 1, 7, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The analysis should balance "the public's need for the full development of relevant facts in federal litigation against the countervailing demand for confidentiality in order to achieve the objectives underlying the privilege in issue." 2 J. Weinstein, M. Burger, J. McLaughlin, *Weinstein's Evidence* ¶ 501[03], at 39–41. The balance does not often favor recognition of a new privilege unless it "promotes sufficiently important interests to outweigh the need for probative evidence." *University of Pennsylvania v. EEOC,* 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (rejecting a peer review privilege as necessary to effective academic tenure decisions). The starting point in the analysis is always the "fundamental principle that 'the public ... has a right to every man's evidence." *Id.* (quoting *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980)). Privileges are disfavored in the law and must be strictly construed. *Id.*

Defendants rely on *Troupin v. Metropolitan Life Ins. Co.,* 169 F.R.D. 546, 549 (S.D.N.Y.1996) and *Flynn v. Goldman, Sachs & Co.,* 1993 WL 362380 (S.D.N.Y.). However, in *Troupin* the court acknowledged the Supreme Court's decision in *University of Pennsylvania* "cast some doubt" on the existence of a self-evaluative privilege and "the questionable force of the reasoning behind the [p]rivilege." *Troupin, supra,* at 549. The court in *Troupin* also noted that at least one commentator rejected the supposed need for the privilege on the ground that competitive and internal organizational factors create sufficient incentive to review organizational policies without the need for the privilege. *Id.* (*citing* James F. Flanagan, *Rejecting a General Privilege for Self–Critical Evaluation,* 51 Geo.Was.L.Rev. 551, 561 (1983)). The court nevertheless found the documents related to the defendant's review of its hiring and promotion practices related to women and persons over 40 to be subject to the self-evaluative privilege. *Id. Flynn,* although decided in 1993, does not discuss *University of Pennsylvania, supra.*

The court finds that the Supreme Court in *University of Pennsylvania* in rejecting a "peer review" privilege implicitly rejected the rationale for a self-evaluation privilege. Both privileges are predicated on the unsubstantiated assertion that candid appraisals of organizational management and personnel practices will be hindered to the detriment of the public interest if such information is subject to disclosure in litigation. In *University of Pennsylvania,* the court refused to accept the argument that unless the institution's evaluations of a tenure candidate was treated as privileged, such evaluations could not be candidly and thus accurately conducted to the detriment of the institution. *University of Pennsylvania, supra,* at 189–90, 110 S.Ct. 577. Here, Defendants contend organizations will not engage in self-critical investigations of sexual harassment claims unless such information is privileged thus compromising those organizations' goals of complying with law, an argument similar to the one advanced and rejected by the court in *University of Pennsylvania.* Further, based on the court's research, neither the Second Circuit nor any other circuit has accepted the self-

evaluative privilege. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 134 (2d Cir.1996) (declining to apply self-evaluative privilege).

■ The Second Circuit has adopted the traditional common law test for establishment of a privilege: (1) the communication was made in the belief that it will not be disclosed; (2) confidentiality is essential to the maintenance of the relationship between the parties; (3) the relationship is one that society considers worthy of being fostered; and (4) the injury to the relationship incurred by disclosure must be greater than the benefit gained in the correct disposal of litigation. *In re Doe,* 711 F.2d 1187, 1193 (2d Cir.1983) (citing 8 J. Wigmore, *Evidence* § 2285, at 527 (McNaugton rev.1961)). The self-evaluation privilege fails at least three of the relevant criteria. First, it is one thing that there may have been an expectation that whatever is revealed during a sexual harassment interview with an employee by an employer representative would receive some degree of confidentiality; it is quite another thing to say it was reasonably expected that disclosure was to be controlled by the interviewee as would be the case in a typical testimonial privilege. Second, as the interviewees are employees, it cannot credibly be maintained that their willingness to retain employment, including cooperating in surveys conducted by third parties at the employer's direction, hinged on the nearly complete confidentiality afforded by a testimonial privilege. Third, in the event an administrative complaint is filed or litigation ensues arising from alleged harassment, it is the employee, as the target of the harassment, who initiates the resulting public disclosure. Thus, if the employment relationship is eventually impaired by disclosure, it is not for lack of complete confidentiality. Therefore, in this case, the claimed self-evaluative privilege fails to meet the traditional test for a testimonial privilege.

Finally, it is not reasonable to believe that organizations will not comply with employment discrimination laws unless independent surveys revealing potential violations are deemed privileged. As noted, organizations have a self-interest in achieving compliance with the law and social expectations. Managers need only to scrutinize their workforce to determine if there are indications of potential discrimination. Governmental agencies have no less an incentive to promote equal opportunity in the workplace.

Whatever need may exist to avoid unnecessary disclosure relating to such material in the course of federal civil litigation can be achieved through the court's authority, pursuant to Fed.R.Civ.P. 26(b)(3), to protect the confidentiality of material prepared in contemplation of litigation or for good cause shown under Fed.R.Civ.P. 26(c). Defendants state that the investigation of Plaintiff was pursuant to the Agency's policy against sexual harassment. Exhibit B to Defendants' Memorandum of Law; *Id.* at 5. Defendants contend that unless the information resulting from the investigation of a complaint under the policy is treated as privileged, the Agency's willingness to continue to investigate future claims will be reduced. *Id.* at 7. However, the policy issued in 1992, specifically states that complaints "will be investigated promptly" and that the "case will be handled in a confidential manner." Exhibit B at 2. As the Agency had a self–imposed duty to investigate harassment claims, there is no ground to believe that the Agency would in the future fail to enforce this policy simply because the results of such investigations are not deemed privileged. Any necessary confidentiality can be afforded as to internal dissemination by general personnel policy and, in the event of litigation, by court order.

Defendants also claim that without a self-evaluative privilege, the results of the interviews will be "sanitized" thus impairing the "quality" of the final Agency determination. Defendants' Memorandum at 8. However, no affidavit from an Agency official attesting to such an sweeping assertion has been provided. *See University of Pennsylvania, supra,* at 196, 201, 110 S.Ct. 577 (noting absence in record of factual basis justifying peer review privilege). The results of an employer's sexual harassment investigation may be entitled to confidential treatment limiting its use in litigation but there is no showing here that the Agency's interest in such confidentiality outweighs the need for the probative evidence. *University of Pennsylvania, supra,* at 189, 110 S.Ct. 577. *See also In re Sealed*

*Case,* 148 F.3d 1073, 1076 (D.C.Cir.) (refusing to recognize protective function privilege because of failure of Secret Service "to establish clearly and convincingly both the need for and the efficacy of the proposed privilege."), *cert. denied sub nom. Rubin v. United States,* — U.S. ——, 119 S.Ct. 461, 142 L.Ed.2d 413 (1998). Nor has any evidence been presented that self-evaluative surveys, confidential or not, necessarily result in improvements by corporate employers in the hiring or promotion of minorities, the disabled, older persons, or women.

 Even if such a privilege were recognized by the court, the information sought would nevertheless be subject to disclosure. *See Troupin, supra,* at 550 (factual information relating sex and age based employment discrimination not privileged). Further, the asserted privilege is limited to voluntarily created materials. *Id.* at 549 (citing *Flynn, supra.*). Where, as here, a state agency acts to enforce the sexual harassment policy applicable to all state agencies, it cannot be said to act voluntarily.

 Finally, Plaintiff has requested additional time within which to complete discovery. Defendants oppose this request. While there has been some delay caused primarily by Plaintiff's tardiness in commencing discovery it also appears that Plaintiff's counsel was ill during a portion of the time. The court has previously extended the period for completion of discovery and based on the pendency of the instant motion the court finds that the parties should be given *until August 16, 1999* to complete discovery. Dispositive motions shall be *filed not later than September 30, 1999.*

## CONCLUSION

Based on the foregoing, Plaintiff's motion for reconsideration is GRANTED and upon such reconsideration the court adheres to its earlier ruling sustaining Defendants' objection to the deposition questions at issue. Plaintiff's motion for amendment of the scheduling order is GRANTED.

SO ORDERED.