In the Matter of the Application of **FEDERATION INTERNATIONALE DE BASKETBALL, FOR A SUBPOENA PURSUANT TO 28 U.S.C. § 1782.**

No. M19–88.

United States District Court, S.D. New York.

Oct. 24, 2000.

---

Robert H. Smit, Simpson Thacher & Bartlett, New York, NY, for Applicant.

Jeffrey Mishkin, Skadden Arps Slate Meagher & Flom, New York, NY, for Respondent National Basketball Association.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The principal question presented by this application is whether a provision of the private collective bargaining agreement between the National Basketball Association ("NBA") and the National Basketball Players Association ("NBPA"), which provides that the details of drug tests administered to NBA players shall remain confidential, should result in the denial of an application by Federation Internationale

de Basketball ("FIBA") for discovery of tests results administered to a former NBA player in order to defend itself in the German courts against a lawsuit brought by that player.

## I

The collective bargaining agreements ("CBAs") between the NBA and the NBPA have contained an Anti–Drug Program since 1983. The current version of the program permits testing of players for drug use in limited circumstances and provides, among other things, for the expulsion from the league of those who test positive for so-called Drugs of Abuse. It provides also that the NBA and its affiliates "are prohibited from publicly disclosing information about the diagnosis, treatment, prognosis, test results, compliance, or the fact of participation of a player in the Program" except "as reasonably required in connection with the suspension or disqualification of a player." [1]

On November 24, 1999, the NBA announced, as permitted by the CBA, "that Stanley Roberts of the Philadelphia 76ers had been expelled from the league because he tested positive for an amphetamine-based designer drug, a substance prohibited by the Anti–Drug Program agreed to by the NBA and the" NBPA. [2]

Following his expulsion from the NBA, Roberts sought employment in Europe as a professional basketball player. As he allegedly was on the verge of signing a $500,000 per year contract to play for a team in Istanbul, FIBA—the rules of which authorize it to ban a player based on a positive drug test administered by the NBA—announced that Roberts was banned from FIBA competition worldwide for two years. [3] Claiming that his prospective Turkish contract fell through as a result of the FIBA ban, Roberts pursued an internal appeals procedure before FIBA. When this proved fruitless, he sued FIBA in the District Court in Munich, Germany, and sought a preliminary injunction barring FIBA from barring him from FIBA competition. [4] He argued, among other things, that he did not in fact violate the NBA's anti-drug rules, that FIBA in any event was not entitled to rely on the press announcement of the NBA test results, and in any case that the FIBA anti-drug policy is not enforceable as a matter of German law because it was not reflected in FIBA's Articles of Association. [5]

In February 2000, the Munich court granted Roberts' application for a preliminary injunction, apparently on the ground that the FIBA anti-drug policy was unenforceable because it was not reflected in its charter. FIBA appealed, and the appeal is scheduled to be heard on October 26, 2000. The parties agreed at oral argument that Roberts seeks to sustain the preliminary injunction in the German appellate court on the ground that the Munich District Court was correct in its view of the German law issue concerning the proper location of the anti-drug policy but, in any case, on the alternative grounds that Roberts did not in fact violate the NBA policy and that FIBA in any case should not be permitted to rely upon the NBA's determination. [6]

On October 20, 2000, FIBA moved by order to show cause for an order, pursuant to 28 U.S.C. § 1782, authorizing issuance

---

1. Buchanan Aff. Ex. A, § 3.

2. Martens Aff. Ex. 1.

3. Martens Aff. ¶ 5.

4. *Id.* ¶¶ 7–8.

5. The decision of the Munich District Court is not part of the record, although a document represented to be an English translation of the decision was handed up during oral argu-

ment by counsel for the NBPA, who was present in court. Given the absence of any dispute as to authenticity or accuracy of the translation, the Court thinks it appropriate to refer to the document. The result here, however, would be no different if the document were excluded from consideration.

6. *See also Martens Aff.* ¶ 13.

of a subpoena commanding that the NBA produce documents relating to (1) Roberts' alleged violation of the NBA drug program (including documents relating to the positive drug test), and (2) any grievance instituted by Roberts under the CBA in connection with the alleged drug violation and the NBA's expulsion of Roberts.

## II

Section 1782(a) provides in relevant part that:

> "The district court of the district in which a person resides or is found may order him to . . . produce a document or other thing for use in a proceeding in a foreign . . . tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the document or other thing be produced, before a person appointed by the court."

■ Here, the NBA resides within the Southern District of New York. The documents in question are sought for use in a proceeding in foreign tribunal, the Court of Appeals in Munich, Germany. The application is made by FIBA, the defendant-appellant in the German action, and therefore by an interested person. Hence, the fundamental prerequisites to relief are satisfied.[7] The NBA nevertheless resists disclosure on two grounds.

### Confidentiality

First, the NBA[8] asserts that the information in question is confidential under the terms of the CBA between it and the players' association and therefore should not be disclosed. Indeed, it argues that the NBPA's willingness to agree to an

anti-drug program in the future would be destroyed if this Court were to grant the requested relief. It goes so far as to contend that the NBA would be unable to maintain any anti-drug program at all if the absolute confidentiality of these test results were breached.

The NBA's position is unpersuasive, particularly in the circumstances of this case. Even if the mutual expectations of confidentiality implicit in the CBA were sufficient to defeat disclosure pursuant to compulsory process in a different situation, the NBA ignores the significance of the fact that it is Roberts—who has the only relevant privacy interest—who has put his compliance with the NBA program in issue by commencing litigation against FIBA in which he flatly denies any violation of the NBA program. Just as the attorney-client and other privileges are waived where the party entitled to confidentiality puts the substance of the privileged matter at issue,[9] any privacy interest an NBA player or former player may have in the confidentiality of his own drug test results must yield where he voluntarily injects the accuracy or existence of those results into litigation brought by him.

■ The NBA's confidentiality argument would fail even apart from Roberts' role in injecting the test results into the German litigation. It is a fundamental proposition of American law "that 'the public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege . . ."[10] And while there are circumstances in which private interests in confidentiality may be sufficient to preclude compelled production, at least in

7. *E.g., In re Application of Esses*, 101 F.3d 873, 875 (2d Cir.1996) (per curiam).

8. The NBPA, which is not a party to this application, was represented at oral argument and took the same position on this point.

9. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991);

*Brimley v. Hardee's Food Systems, Inc.*, No. 93 Civ. 1797(LAK), 1995 WL 51177, at *2 (S.D.N.Y. Feb. 9, 1995).

10. *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950)).

civil litigation,[11] even of some relevant evidence, this is not such a case.

The most basic point is that the CBA does not require that the fact of a positive drug test and expulsion be kept confidential. To the contrary, it explicitly authorizes publication of that information. All that is left, it appears, is the clinical detail about the nature of the test and the level of drugs found in the relevant bodily fluid. There simply is not a very great privacy interest in the details once the basic facts are known, as they are here.

In any case, the private interests of the NBA simply are not sufficient to warrant denial of this application on confidentiality grounds. The NBA's concern is only that the NBPA may resist inclusion of an antidrug program in the next CBA. But the object of the law here is not to make the NBA's collective bargaining easier. Both sides have enormous stakes in reaching agreement on a future CBA. No doubt they will be able to do so, sooner or later.

*Self Evaluative Privilege*

The NBA's second contention is that the information sought by FIBA is protected by a self-evaluative privilege. This argument also is unpersuasive.

■ The first question is assessing this claim of privilege is determination of the governing law. FED.R.EVID. 501 provides in relevant part:

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness [or] person ... shall be governed by the principles of the com-

mon law as they may be interpreted by the courts of the United States in the light of reason and experience."

This action is brought pursuant to Section 1782(a) of the Judicial Code. Accordingly, it is federal rather than state privilege law that controls[12] although state decisions may be persuasive in determining "the principles of the common law ... in the light of reason and experience."[13]

■ The question whether a self evaluative privilege ought to be recognized as a matter of federal law has not yet been settled by the Supreme Court or the Second Circuit. But the question need not be decided here. For even courts that have recognized a self evaluative privilege have held that "the scope of its coverage has been somewhat limited."[14] Among the factors relevant to disclosure are the extent to which the material in question is factual as distinguished from evaluative,[15] the requesting party's need for the information, the extent of any harm to the disclosing party from disclosure, and any adverse effect on the accomplishment of desirable social ends.[16]

■ In this case, FIBA genuinely needs the requested information in view of Roberts' attempt in Germany to controvert the NBA's finding that he violated its antidrug policy. The information sought is entirely factual or nearly so; FIBA seeks principally clinical test results and details concerning the test(s) themselves. And the Court simply is not persuaded that disclosure of this information, at least in circumstances in which the bottom line result that the player tested positive for drug use already is public and in which the

**11.** *See Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 561–62 (S.D.N.Y.1996); FED. R. CIV. P. 26(b)(2), 26(c).

**12.** *See von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987).

**13.** *E.g., Johnson*, 169 F.R.D. at 557–58.

**14.** *Troupin v. Metropolitan Life Ins. Co.*, 169 F.R.D. 546, 548 (S.D.N.Y.1996).

**15.** *Id.* at 548 ("factual matter must be produced but evaluative analysis would be protected"); *Lasky v. American Broadcasting Cos.*, No. 83 Civ. 7438, 1986 WL 9223, *2 (S.D.N.Y. Aug. 13, 1986) (Walker, J.) (same).

**16.** *Troupin*, 169 F.R.D. at 548.

former player voluntarily placed his compliance with the NBA policy at issue elsewhere, is likely to cause any serious harm either to the interests of the NBA or to the public. The worst that might happen is that the NBPA might decline to continue the anti-drug program with which it has lived for seventeen years, a position that could result in substantial public opprobrium and large economic losses for the players should such a position result in a strike or lockout. Neither the risk of such action nor even its realization is sufficient to justify a conclusion that the federal courts should create an evidentiary privilege for drug test results of NBA players.

## III

FIBA's motion is granted in all respects. The NBA is directed to produce the documents described in the subpoena attached to applicant's moving papers forthwith.

SO ORDERED.