Charles **ROBINSON**, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

No. 00–CV–00842C(SC).

United States District Court, W.D. New York.

Sept. 14, 2001.

Paul William Beltz, P.C., Terrence P. Higgins, of counsel, Buffalo, NY, for Plaintiff.

Kathleen M. Mehltretter, United States Attorney, Mary K. Roach, Assistant United States Attorney, of counsel, Buffalo, NY, for Defendant.

## INTRODUCTION

CURTIN, District Judge.

Presently before the court is defendant United States' motion to compel discovery, Item 14, and plaintiff Charles Robinson's cross-motion to compel, Item 15. This case arose after Robinson slipped and fell on the premises of the United States Post Office located at 1200 William Street in Buffalo, New York, on December 9, 1999. At the request of the court, the United States filed this motion to compel on May 29, 2001, seeking an order directing the plaintiff to produce information and authorizations regarding his work history, worker's compensation claims, pharmacy records, Social Security records, and tax records. Robinson responded with a cross-motion to compel the production of PS Form 1769 and an Accident Analysis Report prepared by the Postal Service in connection with the incident.

## *BACKGROUND*

Robinson brings this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 and 2674, *et seq.* Item 1. On December 9, 1999, in the course of his duties as an employee of Canteen Corporation, a company which provides food service to the Post Office, Robinson slipped and fell on the wet floor of the Post Office cafeteria. *Id.* at ¶ 5. He alleges that the slippery condition of the floor was due to the negligence, carelessness, and recklessness of the defendant. *Id.* Robinson contends that he suffered multiple herniations of the discs in his neck and back, psychological injuries, and pain and suffering as a result of the slip and fall accident. *Id.* He seeks damages in a sum not to exceed $8 million. *Id.* at ¶ 9.

## *DISCUSSION*

### I. Defendant's Motion to Compel

#### A. Employment History

Defendant seeks an order directing Robinson to comply with previous discovery re-

quests. Interrogatory No. 20 of defendant's first set of interrogatories sought the names and addresses of all of Robinson's previous employers.[1] In response, Robinson did not identify any employers for the period between 1993 and January 2000. Item 1, Ex. 14. Defendant contends that Robinson's answer is, therefore, incomplete. In his affidavit in opposition to defendant's motion to compel, Robinson's attorney, Terrence P. Higgins, Esq., states that Robinson was employed at the Post Office from July 1998 through January 2000 and that defense counsel had been advised of this fact. Item 15, ¶ 14.

Defendant also seeks authorization to obtain records from all of Robinson's previous employers. Item 14, ¶ 8. Defendant had provided an authorization form to Robinson, but Robinson limited the authorization to his current employer, Canteen Corporation, a/k/a Compass Group. Item 14, Ex. C. Defendant cites several reasons why Robinson's work history is relevant to the present case. It argues that the nature of the work that Robinson may have previously performed could have predisposed or caused him to sustain a back injury, that his employers may have required physical examinations in connection with his employment, which information would be relevant to the present case; and if Robinson did not have regular employment, his lost wage claim may be excessive. Item 14, ¶ 9. Defendant further argues that if Robinson claims lost wages at any point in the future, the United States is entitled to discovery as to the type of employee he was prior to his current job and whether he had a history of unemployment or short-term employment. Id.

In response, Robinson argues that defense counsel, in requesting employment records, is embarking on a "fishing expedition" approach to discovery. Item 15, ¶ 8. He contends that these records are irrelevant and should not be released. Id. at ¶ 9. Robinson also contends that, at this time, he is not claiming future loss of wages; therefore, de-

fendant does not need records of his previous employment. Id. at ¶ 12.

In its reply affidavit, defendant states that if Robinson stipulates to waive his future lost wages claim, it will withdraw its discovery demands relating to wage information. Item 20, ¶ 5. If Robinson does not so stipulate, he should be required to provide the requested information. Id. During oral argument, Mr. Robinson's attorney, Terrence Higgins, Esq., could not unequivocally state that Robinson would not seek future lost wages. Defendant also argues that it has reason to believe that Robinson may have had a preexisting back injury. Id. at ¶ 9. According to Sisters Hospital billing records, Robinson's back was evaluated by Tops Markets, Inc., in June 1997. Id. Robinson denied having been employed in 1997. Id. Defendant concludes that Robinson's back may have been evaluated by a potential employer prior to the accident, and that other prior employers may have information regarding this issue. Id.

Under modern federal law, the discovery process is very liberal and is structured to allow for "the fullest possible knowledge of the issues and facts before trial." *Alford v. Todco, Division of Dallas Corp.*, 1990 WL 82346 (W.D.N.Y.1990) (quoting *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). The federal rules allow for discovery of any matters that appear to be reasonably calculated to lead to the discovery of admissible evidence. Fed. R.Civ.P. 26(b)(1). It seems clear that Robinson's employment records from past employers may contain information that speaks to whether or not he had a preexisting back condition, which may have contributed to his injuries from the slip and fall. Defendant is entitled to this information in order to fully defend itself on the issue of causation. Robinson is ordered to provide a complete answer to Interrogatory No. 20, explaining any periods when he was not gainfully employed, and to provide an unlimited authorization to defendant to obtain his employment records.

1. Item 14, Ex. A. "Interrogatory 20: State the names and addresses of all persons or entities by whom plaintiff has been employed, and the dates of such employment. State whether the plaintiff is presently employed, and if so, the name and address of his current employer. If he is not currently employed, state when he was last gainfully employed and how he presently supports himself or is supported by others."

## B. Worker's Compensation Claims

█ Interrogatory No. 11 of defendant's first set of interrogatories requested detailed information regarding any Worker's Compensation claims that Robinson may have made in New York or any other state.[2] Robinson responded by indicating that he had filed only one Worker's Compensation claim, which was the one related to this incident. Item 14, Ex. A. In his response, Robinson's attorney attached a sworn affidavit, signed by Robinson, which stated that he has never filed any Worker's Compensation claims other than the one related to this case. Item 15, Ex. B. Defendant also sought an authorization from Robinson permitting the release of all of his Worker's Compensation records. Item 14. The authorization provided by Robinson, in response, was limited to the records from the claim filed as a result of the December 9, 1999 accident at the Post Office. Item 14, Ex. E. Defendant argues that if Robinson did not file any other Worker's Compensation claims, then he should have no objection to providing a blanket authorization for past Worker's Compensation claims. Item 14, ¶ 11.

If there are Worker's Compensation claims that Robinson has failed to disclose, the records may reveal information that is relevant to the case at hand. Plaintiff should be permitted to examine these records to attempt to determine whether Robinson had a prior back injury or condition that could predispose him to a back injury. Accordingly, Robinson is ordered to sign an authorization permitting the release of all his Worker's Compensation records.

## C. Social Security Records

█ Defendant also requested an authorization permitting it to obtain any Social Security records relating to Robinson. Item 14, ¶ 12. Because Robinson contends that his injury is permanent in nature, defendant seeks to verify whether he has filed for any disability benefits in relation to this action or any other incident. *Id.* Furthermore, in the event that Robinson does not stipulate to waive any future loss of earnings claims, social security records will reveal his earnings history. *Id.* Robinson refused to provide authorization for these records to defense counsel and stated, in his sworn affidavit, that he has never applied for Social Security benefits. Item 15, Ex. B. To substantiate his claim that he has never filed for Social Security, Robinson is ordered to provide an authorization to defendant permitting the release of those records.

## D. Pharmacy Records

Defendant requested an authorization from Robinson that would allow for the release of his pharmacy records. Item 14, ¶ 13. Robinson provided the authorization. However, defense counsel was advised by Tops Markets, one of the pharmacies where Robinson obtained medications, that the authorization was unacceptable. *Id.* In response, Robinson's attorney stated that he had spoken to Michael Dixon, Esq., attorney for Tops Markets, several weeks prior to defendant's submission of its motion to compel and had been told by Dixon that he would instruct Tops to release the records. Item 15, ¶ 23. When defendant contacted Dixon on July 9, 2001, Dixon stated that he spoke to Robinson's attorney, who told him that he would send a letter confirming the request to release records since the authorization was unacceptable. Item 20, ¶ 15. As of July 9, 2001, Dixon had not yet sent the confirmation letter. *Id.* Plaintiff is hereby ordered to send the confirmation letter to Mr. Dixon, if he has not done so already, in order that defendant may receive Robinson's pharmacy records.

## E. Tax Records

Although the release of tax records to defendant is not objected to by Robinson, the authorization that he provided was out of date when received by defense counsel. Robinson is hereby ordered to provide an

---

**2.** Item 14, Ex. A. "Interrogatory 11: Has plaintiff made or filed for workers compensation benefits in this or any other state? If so, for each claim, please state the circumstances, nature and extent of the injuries claimed, the name and address of the employer against whom the claim was filed, the name and address of each examining doctor, the name, place and person or institution [with] whom the claim was filed."

updated authorization releasing his tax records to defendant.

## II. Robinson's Cross–Motion to Compel

### A. PS Form 1769 and Accident Analysis Report

The documents at issue in Robinson's cross-motion to compel are two accident reports prepared by defendant in connection with the slip and fall accident. Item 15, ¶ 27. Defendant refused to produce these reports and asserts the self-critical analysis privilege to bar release of the documents. *Id.* However, in its reply affidavit to Robinson's cross-motion to compel, defendant attached redacted copies of the two forms, PS 1769—United States Postal Service Accident Report, and Accident Analysis Report, as exhibits. Item 20, Ex. A and B. The redacted portions of the PS 1769 Accident Report include a narrative statement as to how preventative action will eliminate or reduce causes and prevent accidents, and a narrative description of the accident. The redacted portions of the Accident Analysis Report include statements in response to questions asking how the accident occurred, why it occurred, management factors that contributed to the accident, the root causes of the accident, and actions that have been or will be taken to prevent recurrence of each factor and cause. Item 20. Unredacted copies of the forms were submitted to the court for *in camera* review attached to a July 13, 2001 letter from Assistant United States Attorney, Mary K. Roach. Also submitted with defendant's reply affidavit was an affidavit of Kathleen Hassan, the Plant Safety Specialist for the Buffalo, Elmira, and Jamestown United States Postal Service facilities, explaining the contents of the two reports. Item 21. Ms. Hassan averred that these forms are completed for the purpose of improving safety levels at the Post Office and preventing recurrence of accidents. *Id.* at ¶ 5.

■ Under Fed.R.Civ.P. 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending litigation." It is well established that " 'the public ... has a right to every man's evidence,' except for those persons protected by a constitutional, common-law, or statutory privilege." *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (citations omitted). Such privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth." *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Federal Rule of Evidence 501 provides the framework for determining whether information is privileged. In a federal question case, as this is, the federal common law of privilege applies. *In the Matter of the Application of Federation Internationale de Basketball,* 117 F.Supp.2d 403, 407 (S.D.N.Y. 2000).

■ The self-critical analysis privilege concerns situations where " 'an intrusion into the self-evaluative analysis of an institution would have an adverse effect on the [evaluative] process, with a net detriment to a cognizable public interest.' " *Troupin v. Metropolitan Life Insurance Company,* 169 F.R.D. 546, 548 (S.D.N.Y.1996) (citations and quotation omitted). Put another way, "if a party has conducted a confidential analysis of its own performance in a matter implicating a substantial public interest, with a view towards correction of errors, the disclosure of that analysis in the context of litigation may deter the party from conducting such a candid review in the future." *Wimer v. Sealand Service, Inc.,* 1997 WL 375661 at *1 (S.D.N.Y. July 3, 1997).

Whether the self-critical analysis privilege should be recognized in federal law has not been resolved by the Supreme Court or the Second Circuit. *Federation Internationale de Basketball,* 117 F.Supp.2d at 407, prompting one court to observe, "this particular privilege has led a checkered existence in the federal courts." *Wimer,* 1997 WL 375661 at *1. *Wimer* noted that some courts have rejected the privilege outright; that its viability has been called into question by the Supreme Court's analysis in *University of Pennsylvania v. EEOC,* 493 U.S. 182, 200–01, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); and that even those courts that have "occasionally applied it have limited its reach and declined to utilize it to block production of

purely factual materials." *Wimer,* 1997 WL 375661 at *1. In addition, the only decision considering the self-critical analysis privilege in this district, after thorough analysis, rejected it as not being available under federal law. *Roberts v. Hunt,* 187 F.R.D. 71, 75 (W.D.N.Y.1999) (Foschio, U.S.M.J.)[3]. The Southern District, on the other hand, has set forth a standard for applying the privilege.[4]

In the tort context, the privilege is applied less frequently. In *Gillman v. United States,* 53 F.R.D. 316, 319 (S.D.N.Y.1971), an action brought under the Federal Tort Claims Act, the court ordered the production of defendant's reports that included factual testimony about the incident in question, and excised those parts containing suggestions or comments directed to improving future procedures (which it observed had no relevance to the litigation). In *Granger v. National Railroad Passenger Corp.,* 116 F.R.D. 507 (E.D.Pa.1987), a lawsuit brought under the Federal Employers' Liability Act, the court ordered the release of portions of defendant's accident report entitled "Cause" and "Contributing Factors," while the portions entitled "Accident Analysis" and "Committee Recommendations" were protected under the self-critical analysis privilege.

In contrast, *Wimer,* brought under the Jones Act, concerned an injured seaman who sought production of an investigative report prepared by four crew members after the accident. The issue was whether a paragraph that recommended corrective action contained in that report was discoverable. The court did not protect the document, holding that the information in that section of the report did not constitute "information . . . of the type whose flow would be curtailed if the discovery were allowed," *Id.* at *2, citing "The Privilege of Self–Critical Analysis," 96 Harv.L.Rev. 1083, 1086 (1983). The *Wimer* court went on to explain that

[i]t is altogether implausible that a company in the business of supplying or operating ocean-going vessels would choose not to fix demonstrably malfunctioning equipment merely because those repairs, or reports recommending them, might find their way into the hands of an injured seaman. Indeed, the absence of any incentive to conceal is underscored by the fact that the company apparently arranges for prompt documentation of the fact of such accidents and their cause in other documents, which it produces in litigation.

*Id.* at *2. *See Hardy,* 114 F.R.D. at 642.

There is no question that the factual description of the accident from PS Form 1769 and the answers to the "how, why, what management factors contributed to this accident, and what are the root causes which allowed the above factors to exist" questions from the Accident Analysis Report are not covered by the privilege. "The cause of an accident and factors contributing to an accident are at the heart of every action brought by an employee to recover for his or her injuries." *Granger,* 116 F.R.D. at 510. What is at issue here is whether the section headed "explain how the preventive action will eliminate or reduce cause(s) and prevent similar accidents" on Form 1769, and the section entitled "What actions have or will be taken to prevent recurrence of each factor and cause? Expected completion date of each?" on the Accident Analysis Report are privileged.

The court finds *Wimer's* analysis, as opposed to the *Granger* analysis, more compelling. The Post Office prepares accident reports in the course of its business, as required by the *Supervisor's Safety Handbook EL–801,* for the general purpose of preventing future accidents. Item 21, ¶¶ 4–10. As in *Wimer,* it would similarly be implausible to believe that the Post Office would cease its practice of investigating acci-

---

**3.** *See also Franzon v. Massena Memorial Hospital,* 189 F.R.D. 220, 224 (N.D.N.Y.1999), which refused to recognize the privilege in the Northern District of New York.

**4.** "Where a party establishes that disclosure of requested information could cause injury to it or otherwise thwart desirable social policies, the

discovering party will be required to demonstrate its need for the information, and the harm it would suffer from the denial of such information would outweigh the injury that disclosure would cause the other party or the interests cited by it." *Flynn v. Goldman, Sachs & Co.,* 1993 WL 362380 at *1 (S.D.N.Y. Sept. 16, 1993).

dents and writing up the results, in order to prevent future accidents, on the basis that such reports could be discoverable. There is no reason to believe the Post Office would be any less candid if it knew the contents of such reports would be revealed. Certainly the public has an interest in the safety of public buildings. However, assertion of the privilege "must be balanced against the party's need for discovery fully and fairly to determine the issues." *In re Crazy Eddie Securities Litigation,* 792 F.Supp. 197, 205 (E.D.N.Y.1992). As a qualified privilege, at best, the court "must weigh the need of the party requesting the disclosure against the interest in confidentiality which the privilege protects." *Franzon v. Massena Memorial Hospital,* 189 F.R.D. 220, 224 (N.D.N.Y. 1999). No interest in confidentiality has been asserted here, and Robinson argues that the non-disclosed reports may be critical to prove his claim as well as to counter the defendant's allegations of comparative negligence.

██ The Accident Analysis Report and PS Form 1769 do not "encourag[e] self-improvement through uninhibited self-analysis and evaluation," *In re Crazy Eddie Securities Litigation,* 792 F.Supp. 197, 205 (E.D.N.Y. 1992), and neither has defendant made a showing that disclosure of the requested information could cause it injury, otherwise thwart desirable social policies, or affect a substantial public interest.[5] *See also Melhorn v. New Jersey Transit Rail Operations, Inc.,* 2001 WL 516108 at *1 (E.D.Pa. May 15, 2001).

After *in camera* review of the two reports, the court holds that the self-critical analysis privilege does not apply to the two documents and orders the government to turn over unredacted copies of the forms to the plaintiff.

### CONCLUSION

For the reasons set forth above, the United States' motion to compel, Item 14, is granted in its entirety. Robinson is hereby ordered to comply with all discovery requests contained therein. Robinson's cross-motion to compel, Item 15, is also granted in its entirety, and the defendant is ordered to release unredacted copies of the Accident Analysis Report and PS Form 1769 to plaintiff. As previously scheduled, the court shall meet with counsel on Friday, September 21, 2001, at 11:30 a.m.

So ordered.

---

5. Regarding the references to corrective action in the two documents, the *Wimer* court noted that "under Fed.R.Civ.P. 407, the recommendation as to corrective action may well not be admissible, and hence there is still less reason to suspect that disclosure of the entire report will choke off the flow of such information." *Id.* at *2 (and cases cited therein).