Lt. Valimore WILLIAMS,
et al., Plaintiffs,

· v.

CITY OF BOSTON, et al., Defendants.

No. CIV.A. 00–11082–NG.

United States District Court,
D. Massachusetts.

Feb. 3, 2003.

Henry F. Owens, III, Barbara Lee Horan, Owens & Associates P.C., Boston, MA, for Plaintiffs.

Walter B. Prince, Laurie F. Rubin, Prince, Lobel Glovsky & Tye LLP, Douglas I. Louison, James W. Simpson, Jr., Merrick, Louison & Costello, Harold L. Lichten, Pyle, Rome Lichten & Ehrenberg,P.C., Boston, MA, David J. Burgess, Concord, MA, Stephen J. Weymouth, Merita A. Hopkins, Corporation Counsel Law Department, Scott P. Lopez, Law Office of Scott P. Lopez, Boston, MA, for Defendants.

### MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM DEFENDANT CITY OF BOSTON AND FOR SANCTIONS

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

This is a civil rights action brought by the plaintiffs, Lieutenant Valimore Williams ("Lieutenant Williams"), and his wife, Judith L. Williams ("Ms.Williams") (collectively, "plaintiffs"), alleging that defendants, City of Boston ("the City"), Superintendent Robicheau, Captain O'Rourke, Sergeants Donovan and O'Neil, Officer Wallace, Police Commissioner Evans, and Mayor Menino, discriminated against Lieutenant Williams on the basis of race and color, violated his civil rights, and engaged in retaliatory conduct against him following, and as a result of, his filing of a complaint with the Massachusetts Commission Against Discrimination. In addition, Ms. Williams has asserted claims of negligent infliction of emotional distress and loss of consortium.

This matter is presently before the court on the "Plaintiffs' Motion to Compel Production of Documents From Defendant City of Boston and for Sanctions" (Docket # 109). At issue is the City's refusal to produce two hearing officers' reports relating to Donovan and Robicheau.[1] For the reasons detailed

---

1. The City voluntarily produced the other documents that were the subject of the motion to compel.

herein, the motion to compel is ALLOWED and the request for sanctions is DENIED.

## II. *STATEMENT OF FACTS*[2]

Plaintiffs filed their Request for Production of Documents on or about August 14, 2002. In response, the City has withheld two reports issued by hearing officers on the grounds that they were subject to a "governmental" or "deliberative process" privilege.[3]

Rule 109 of the Boston Police Department ("BPD") Rules and Procedures sets out the disciplinary procedures to be followed for Police Department personnel.[4] In the case of the defendants Robicheau and Donovan, disciplinary hearings were held "to determine the facts and situations surrounding" plaintiffs' allegation. (BPD Rule 109, § 59). These disciplinary hearings were conducted before hearing officers appointed by the Police Commissioner (the "Commissioner"). (City Opp'n at 2; BPD Rule 109, § 55). Upon completion of the hearings, the hearing officers submitted a written report to the Commissioner (the "Reports"), with a copy also sent to the Office of Internal Investigations, summarizing the evidence introduced by the parties, making specific findings of fact, and recommending a disposition of the cases brought against Robicheau and Donovan. (City Opp'n at 2; BPD Rule 109, § 63). The recommendations made by the hearing officers were not binding on the Commissioner, who is obligated to give to the employee "a written notice of his decision stating fully and specifically the reasons therefor." (BPD Rule 109, § 63).

The City has produced the transcripts of the disciplinary hearings, the Internal Affairs Division's documents that led to the charges being filed against co-defendants Donovan and O'Rourke, and the notifications to Robicheau and Donovan of the Commissioner's final decision. (City Opp'n at 3–4). The City, however, has refused to produce the Reports relating to the Robicheau and Donovan hearings.

## III. *DISCUSSION*

### A. *The Governmental or Deliberative Process Privilege.*

The City contends that the Reports are protected from discovery because they reflect advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated. Additionally, the City argues that the need of the BPD to protect these documents outweighs plaintiffs' need for these documents.

Where, as here, federal substantive law controls, federal common law is controlling on the issue of privileges. *See Krolikowski v. Univ. of Mass.*, 150 F.Supp.2d 246, 248 (D.Mass.2001), and cases cited; Fed.R.Evid. 501.[5] The federal courts have long recognized a "governmental" or "deliberative process" privilege. *See, e.g., N.O. v. Callahan,* 110 F.R.D. 637, 642 (D.Mass.1986), and cases cited. It is universally recognized that the deliberative process privilege is qualified and not absolute, and that the courts "are obliged to balance conflicting interests on a case-by-case basis." *Gomez v. City of Nashua,* 126 F.R.D. 432, 434 (D.N.H.1989); *accord N.O. v. Callahan,* 110 F.R.D. at 643. That having been said, the scope and application of the privilege have varied greatly from case to case and jurisdiction to jurisdiction.

The evolution of the deliberative process privilege was discussed by the court in *Kelly v. City of San Jose,* 114 F.R.D. 653 (N.D.Cal. 1987). As that court explained:

As originally developed, the deliberative process privilege was designed to help pre-

---

**2.** The statement of facts is limited to those relevant to the pending motion.

**3.** At oral argument and in its Opposition to the Motion to Compel, the City made it clear that it was not pursuing the other claims of "attorney-client," "official information" or "investigative process" privilege which it had raised in its document response.

**4.** A copy of Rule 109 is attached to the City's Opposition to the Motion to Compel. (Docket # 116)

**5.** There is no conflict with state law in the instant case in any event, since Massachusetts does not recognize a "governmental" or "deliberative process" privilege. *Gen. Elec. Co. v. United States EPA,* 18 F.Supp.2d 138, 141 (D.Mass.1998).

serve the vigor and creativity of the process by which government agencies formulate important public policies .... The principal idea that inspires the privilege is that the people who contribute to *policy* formulation will be less afraid to offer honest (albeit painful) analyses of current and contemplated policies, and will be less shy about suggesting bold, creative (and sometimes hairbrained) policy alternatives, if they know that their work is not likely to be disclosed to the public.

*Id.* at 658–59 (internal citations omitted) (emphasis in original). *Accord Gen. Elec. Co. v. United States EPA,* 18 F.Supp.2d at 140 ("executive deliberative process" privilege "is grounded on the proposition 'that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl' ") (internal citation omitted). Obviously, as originally formulated, the deliberative process privilege would not preclude the production of the Reports in the instant case, since they do not reflect information relating to any policy determination.

As the *Kelly* court explained, however:

Through time, and under pressure to find some "privilege" that would cover additional material, some courts have broadened the "deliberative process" privilege so that it can be invoked not only for communications that contribute to the formulation of important public "policy", but also for communications that might contribute to the making of any "decision" by a public official.

114 F.R.D. at 659. Obviously, the problem with such a broad reading of the privilege is that "[s]o broadened, there is very little information that would not be entitled to some level of protection." *Id.*

While some lower courts, as *Kelly* explained, have unduly broadened the privilege, it is clear that even when the privilege is said to apply to "decisions" as well as "policies," those decisions must be more than the factual determination at issue in the instant case,

and there must be a significant reason to withhold the information. Thus, in *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001), the Court, in addressing the Freedom of Information Act exclusion of privileged documents, held that "[w]ork product protects 'mental processes' of the attorney' ... while deliberative process covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' " *Id.* at 8, 121 S.Ct. at 1065–66 (internal citation omitted). The Court went on to explain the basis of the privilege as follows:

The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' ... by protecting open and frank discussion among those who make them within the Government[.]

*Id.* at 8–9, 121 S.Ct. at 1066 (internal citations omitted). Therefore, although the privilege was applicable to governmental "decisions" as well as "policies," it should only be applied consistent with its stated purpose.

Viewing the policy behind the deliberative process privilege, it is clear that it does not apply to the final Reports of the hearing officers in the instant case. The hearing officers' recommendations, like the facts which are contained in the Reports, is information passed on to the Commissioner for his consideration. It is not supposed to form the subject of discussion between the hearing officer and the Commissioner, and its production should in no way chill the Commissioner's decision-making process, especially since he is obligated by Rule 109 to explain the basis of his decision anyway. While the City argues that the Report is merely advisory, in fact it is the final decision of the hearing officer who, presumably, would stand by his or her decision.[6] It is not an "adviso-

---

**6.** This is in contrast to a request for the hearing officers' notes which "may reflect his judgment about what evidence at the hearing was noteworthy, or they may be only a record of potentially relevant testimony or evidence" and may be more appropriately protected by the privilege. *Gomez v. City of Nashua,* 126 F.R.D. at 436 (citation omitted).

ry" or "draft" opinion in the sense that it is subject to further rewriting or rethinking before it is issued. In short, this court does not find that the disclosure of the Reports would in any way interfere with the decision-making process that the privilege is designed to protect.

Moreover, withholding the hearing officers' final Report is inappropriate in this civil rights case against a police department. In federal civil rights cases, "an assertion of privilege must 'overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.'" *Mason v. Stock*, 869 F.Supp. 828, 833 (D.Kan. 1994) (internal citations omitted). It "offends basic notions of openness and public confidence in our system of justice" to shield the results of a police department investigation from public scrutiny, as the public's confidence in the workings of the police department is of utmost importance. *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D.Cal. 1995) (finding deliberative process privilege "inappropriate for use in civil rights cases against police departments"), and cases cited. *Accord King v. Conde*, 121 F.R.D. 180, 192–93 (E.D.N.Y.1988) (discussing factors to be considered in applying privilege, and expressing skepticism that disclosure of internal investigative reports would compromise or chill investigations), and cases cited. Finally, but no less importantly, where, as here, the "decision-making process itself is the subject of the litigation," it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information. *Burka v. NYC Transit Auth.*, 110 F.R.D. 660, 667 (S.D.N.Y.1986), and cases cited.

For these reasons, the plaintiffs' Motion to Compel the Reports is ALLOWED. However, as the City raised serious and supportable objections to the production of the Reports as well as other documents which were originally subject to the motion to compel, the plaintiffs' request for sanctions is DENIED.

## IV. *ORDER*

Based on the foregoing, it is hereby ORDERED as follows:

Plaintiffs' Motion to Compel Production of Documents from Defendant, City of Boston and for Sanctions (Docket # 109) is ALLOWED IN PART and DENIED IN PART as follows:

(1) The City shall provide copies of (a) the decision of the hearing officer in the case of Boston Police Department v. Michael Donovan, Bates No. B0802–B0804, and (b) the decision of the hearing officer in the case of Boston Police Department v. Laurence Robicheau (unnumbered) within seven (7) days of the date of this Order.

(2) Plaintiffs' request for sanctions is denied.