James **SCOTT**, Plaintiff,

v.

**BOARD OF EDUCATION OF THE CITY OF EAST ORANGE, Everett Jennings, and Robert Bowser, Defendants.**

Civ.A. No. 01–4171(JCL).

United States District Court,
D. New Jersey.

Jan. 6, 2004.

Michael D. Shaffer, Voorhees, NJ, for plaintiff.

Stefani C. Schwartz, Schwartz, Simon, Edelstein, Celso & Kessler, Florham Park, NJ, Judy Laudati Cavet, Bisceglie & Friedman, P.C., Newark, NJ, Hardge Davis, East Orange, NJ, for defendants.

## OPINION

WIGENTON, United States Magistrate Judge.

Before the Court is a motion for a protective order (the "Motion") filed by defendants the Board of Education of the City of East Orange (the "Board"); Everett Jennings ("Jennings"), a member of the Board; and Robert Bowser ("Bowser"), the Mayor of the City of East Orange, (collectively, "Defendants"). Defendants seek to preclude plaintiff James Scott ("Plaintiff") from inquiring into the mental impressions and discussions of the members of the Board that contributed to their decision to terminate Plaintiff's employment with the Board, pursuant to the Deliberative Process Privilege and the Open Public Meetings Act, N.J.S.A. § 10:4–12.

The Court decides the Motion based upon the written submissions of the parties pursuant to *Fed.R.Civ.P.* 78. For the reasons set forth below, the Motion is denied.

*Background*

Plaintiff learned of a potential position with the Board through Dr. John Howard ("Howard"), at the time the Superintendent of the Board. *See* Compl. ¶ 8. Plaintiff and Howard resided at the same apartment complex and were social acquaintances. *Id.* ¶ 9. In July 1995, Plaintiff was hired as a foreman for the Board. *Id.* ¶¶ 7 and 10.

During his employment with the Board, Plaintiff received satisfactory job performance evaluations and, in May 1997, Plaintiff was promoted to HVAC Supervisor. *Id.* ¶¶ 11–12. During his employment, Plaintiff developed a professional and personal relationship with Howard. *Id.* ¶ 13.

In January 1998, Bowser was sworn in as the Mayor of the City of East Orange. *Id.* ¶ 14. During his campaign, Bowser opposed the educational funding initiatives supported by Howard and Sheila Oliver, his opponent for Mayor. *Id.* ¶ 14. Thereafter, Bowser appointed members to the Board who pursued the removal of Howard as the Superintendent and of employees aligned with Howard including Plaintiff. *Id.* ¶¶ 14 and 44.

In 1998, pursuant to an initiative of the State of New Jersey, Plaintiff, on behalf of the Board, solicited and received sealed and confidential bids for an oil to gas heating conversion project. *Id.* ¶¶ 15–17. In April 2000, Plaintiff submitted three bids to the Board and recommended that LJM Engineering Group ("LJM") be awarded the project because it was a qualified contractor and submitted the lowest bid. *Id.* ¶¶ 18–19. The Board rejected all three bids, and Jennings instructed Plaintiff to meet with representatives of Technical Associates, another contractor, to explain the conversion project. *Id.* ¶¶ 20–21 and 24. Plaintiff alleges that Jennings has a past and/or current relationship with Technical Associates. *Id.* ¶¶ 22–23. Plaintiff met with representatives of Technical Associates to discuss the conversion project. *Id.* ¶ 24. In June 2000, Technical Associates submitted a bid that was higher than the bid submitted by LJM and, then, it lowered its bid to match LJM's bid. *Id.* ¶¶ 25 and 27. Plaintiff contends that the bid submitted by Technical Associates contravened the Board's bidding procedures because the amounts of the preceding three bids were disclosed publicly before Technical Associates submitted a bid. *Id.* ¶ 26.

In July 2000, the Board held a meeting, and Plaintiff refused to place on the agenda the bid submitted by Technical Associates because he believed that Technical Associates had not followed the Board's bidding

procedures. *Id.* ¶ 28. Plaintiff alleges that as a result of his refusal to submit Technical Associates' bid, members of the Board threatened, harassed and pressured him into awarding the conversion project to Technical Associates. *Id.* ¶ 29. Notwithstanding the pressure, Plaintiff did not assist Technical Associates to get the contract for the conversion project. *Id.* ¶ 30.

In August 2000, the Board notified Plaintiff that he was being investigated for working at Howard's residence during business hours with the Board's materials. *Id.* ¶ 31. Plaintiff denies these allegations. *Id.* ¶ 32. In September 2000, Plaintiff was suspended by the Board. *Id.* ¶ 33. In January 2001, Plaintiff was terminated by the Board because, according to the Board, he failed to secure approval prior to purchasing plumbing supplies. *Id.* ¶¶ 34–35. Plaintiff denies that he did not have approval prior to purchasing plumbing supplies and asserts that this reason is a pretext for his failure to recommend Technical Associates for the conversion project and participate in an illegal bidding scheme. *Id.* ¶¶ 36–37; Plaintiff's Memo. of Law in Opp'n to Defendants' Motion for a Protective Order at 6 and 9.

As such, Plaintiff filed a complaint against Defendants in which he alleges, *inter alia,* that in terminating his employment, Defendants, "acting under color of law, have violated [his] constitutional rights including his right to free expression, political association, substantive and procedural due process, privacy and equal protection under 42 U.S.C. § 1983." Compl. ¶ 45. Plaintiff seeks to depose members of the Board regarding their mental impressions and discussions that contributed to their decision to terminate his employment. Plaintiff argues that neither the Deliberative Process Privilege nor the Open Public Meetings Act preclude his access to the Board's pre-decisional deliberations that led to his termination, and that this information is necessary to challenge Defendants' purported reason for his termination.

*Discussion*

I. *Deliberative Process Privilege*

■ The Federal Rules of Civil Procedure govern civil matters filed in federal court. *Fed.R.Civ.P.* 1. Federal Rule of Civil Procedure 26(b)(1) provides, in pertinent part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to [a] claim or defense." *Fed. R.Civ.P.* 26(b)(1). Privileges are designed to exclude evidence and, thus, must be narrowly construed. *See U.S. v. Nixon,* 418 U.S. 683, 709–10, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). A party asserting the protection of a privilege has the burden to establish its applicability. *See Torres v. Kuzniasz,* 936 F.Supp. 1201, 1208–09 (D.N.J.1996) (citing *G–69 v. Degnan,* 130 F.R.D. 326, 331 (D.N.J. 1990)).

■ When a claim is based on federal law, like a section 1983 claim, issues relating to privilege are governed by federal common law. *See Fed.R.Evid.* 501. Under federal common law, the Deliberative Process Privilege (the "Privilege") protects the "decision making processes of government agencies" by limiting access to pre-decisional communications "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." (internal citations omitted) *National Labor Relations Board v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The Legislature underscored the significance of the Privilege and provided:

It was pointed out in the comments of many of the agencies that it would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny. It was argued, and with merit, that efficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.' The committee is convinced of the merits of this general proposition, but it has attempted to delimit the exception as narrowly as consistent with efficient Government operation.

*Environmental Protection Agency v. Mink,* 410 U.S. 73, 87, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973) (quoting S.Rep.No. 813, p. 9, U.S.Code Cong. & Admin.News 1966, p. 2418).

However, notwithstanding the benefit to the government, the Privilege offers qualified, not absolute, protection. Thus, once it determines that the Privilege applies, a court must weigh a party's need for discovery against the government agency's need for confidentiality in the matter before it. *See Torres v. C.U.N.Y.,* 1992 WL 380561, *7 (S.D.N.Y.1992) (citing *In re Franklin National Bank Securities Litigation,* 478 F.Supp. 577, 582 (E.D.N.Y.1979)). Factors that should be considered include:

(i) the relevance of the evidence sought to be protected;

(ii) the availability of other evidence;

(iii) the "seriousness" of the litigation and the issues involved;

(iv) the role of the government in the litigation; and

(v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.*

The Privilege is properly limited to "communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately to shield all decision-making by public officials." *Grossman v. Schwarz,* 125 F.R.D. 376, 381 (S.D.N.Y.1989) (citing *Kelly v. San Jose,* 114 F.R.D. 653, 658–59 (N.D.Cal.1987)). *See also Soto v. City of Concord,* 162 F.R.D. 603, 612–13 (N.D.Cal.1995) ("[t]he deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formulation of important public policy.") (quoting *Kelly,* 114 F.R.D. at 659, following *Burka v. New York City Transit Authority,* 110 F.R.D. 660 (E.D.N.Y. 1986)). The Privilege is not designed to shield all communications that support any decision made by a government agency. *Torres v. City University of New York,* 1992 WL 380561, *7 (following *Kelly,* 114 F.R.D. at 659). Indeed, "[r]outine operating decisions cannot be transformed into policy formulation at the higher levels of government simply because they are made at public institutions." (internal quotations omitted) *Id.* at *7 (citing *White v. N.Y.C. Health & Hospitals Corp.,* 1990 WL 33747, *7–8 (S.D.N.Y. 1990)).

Further, when the deliberations of a government agency are at issue, the Privilege is not available to bar disclosure of such deliberations. Particularly, "[i]n a civil rights action where the deliberative process of State or local officials is itself genuinely in dispute, privileges designed to shield that process from public scrutiny must yield to the overriding public policies expressed in the civil rights laws." *Grossman,* 125 F.R.D. at 381 (citing *Burka v. New York City Transit Authority,* 110 F.R.D. 660, 667 (S.D.N.Y. 1986)). *See also Memorial Hospital v. Shadur,* 664 F.2d 1058 (7th Cir.1981) (confidential medical disciplinary proceedings required to be disclosed in federal antitrust action alleging conspiracy); *United States v. AT & T,* 524 F.Supp. 1381, 1389–90 (D.D.C.1981) (FCC employees could be questioned about thought processes in administrative process, notwithstanding claim of deliberative process privilege, where manipulation of agency decisions by employees was in issue in antitrust action); *Hinsdale v. City of Liberal, Kansas,* 1997 WL 557314, *1 (D.Kan.) ("Courts have consistently found that the [deliberative process] privilege is outweighed by the interest in disclosure where a case is based on alleged violations of federally-protected civil rights.") (citing *United States v. Phoenix Union High School District,* 681 F.2d 1235, 1237–38 (9th Cir.1982), *cert. denied,* 459 U.S. 1191, 103 S.Ct. 1169, 75 L.Ed.2d 422 (1983) (information sought to determine compliance with civil rights law had to be provided despite state law of confidentiality)).

In the instant matter, Plaintiff may question members of the Board regarding their pre-decisional deliberations that led to his termination of employment. Plaintiff has alleged that he was terminated, in violation of section 1983, because he failed to participate in an illegal bidding scheme and because he attempted to unearth such scheme. In other words, Plaintiff is attacking the integrity of the Board's decision to terminate him and is seeking to disclose the Board's misconduct. Thus, inquiry into the Board's pre-decisional mental impressions and discussions is necessary to challenge the purported reason for Plaintiff's termination. Other-

wise, the Board would be able to insulate itself from accountability from potential civil rights violations. So important is the prevention of such a result, that the Privilege is not available to the Board in this instance.

In fact, the Privilege cannot be invoked by the Board in this matter because the Privilege shields deliberations that contribute to the formulation of important public policy not routine operating decisions like the termination of a HVAC Supervisor. Routine operating decisions cannot be transformed into policy formulation at the higher levels of government simply because they are made at public institutions.

## II. *Open Public Meetings Act*

■ Pursuant to the Open Public Meetings Act (the "Act"), N.J.S.A. § 10:4–12(b), a public body:

> may exclude the public only from that portion of a meeting at which the public body discusses ... [a]ny matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a public meeting.

*Id.* Thus, the Act enables a public body to exclude the public from particular meetings. The Act, however, has no effect on whether Plaintiff may access the Board's pre-decisional deliberations that contributed to his termination.

## III. *Conclusion*

For these reasons, Plaintiff may inquire into the mental impressions and discussions of the members of the Board that contributed to their decision to terminate Plaintiff subject to the limitation that the information discovered may be used only in this litigation. The Motion is denied.

## ORDER

Before the Court is a motion for a protective order (the "Motion") filed by defendants the Board of Education of the City of East Orange (the "Board"); Everett Jennings ("Jennings"), a member of the Board; and Robert Bowser ("Bowser"), the Mayor of the City of East Orange, (collectively, "Defendants"). Defendants seek to preclude plaintiff James Scott ("Plaintiff") from inquiring into the mental impressions and discussions of the members of the Board that contributed to their decision to terminate Plaintiff's employment with the Board, pursuant to the Deliberative Process Privilege and the Open Public Meetings Act, N.J.S.A. § 10:4–12.

For the reasons set forth in the Opinion of even date, the Motion is denied. Plaintiff may question members of the Board regarding their mental impressions and discussions that contributed to their decision to terminate Plaintiff subject to the limitation that the information discovered may be used only in this litigation.

**SO ORDERED.**