Aaron E. ANDERSON, Plaintiff,

v.

MARION COUNTY SHERIFF'S DE-
PARTMENT, Patrick Commiskey,
Larry Logsdon, Defendants.

No. 1:02–CV–01994–JDT–TAB.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 31, 2004.

Denise K. LaRue, Haskin Lauter & Larue, Indianapolis, IN, for Plaintiff.

Robin M. Lybolt, Suzannah Wilson Overholt, Office of Corporation Counsel, Indianapolis, IN, for Defendants.

## ENTRY ON PLAINTIFF'S MOTION TO COMPEL

BAKER, United States Magistrate Judge.

### I. Introduction.

Aaron Anderson, an African–American male, claims that a female co-worker falsely accused him of sexual harassment. Due to this accusation, Defendant Marion County Sheriff's Department ("MCSD") held a disciplinary hearing and ultimately found that Anderson violated MCSD policies concerning sexual harassment, cooperation with investigations, truthfulness, general conduct and conduct unbecoming an officer. Based on these findings, the disciplinary hearing board recommended that Anderson be demoted from lieutenant to corrections officer, receive a one-day suspension, and attend sensitivity training concentrating on sexual harassment. Thereafter, Colonel Larry Logsdon placed Anderson on administrative leave with pay and required him to undergo a psychological fitness for duty examination. In addition, according to Anderson, Logsdon and Deputy Chief Patrick Commiskey forced Anderson to resign by threatening to "add two (2) pages into his personal file about the sexual harassment incident which would make Anderson personally liable for defending a $300,000 lawsuit, and also, prevent him from obtaining another job." [Compl. ¶ 18].

As a result, Anderson brought suit against MCSD claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Anderson also sued Commiskey and Logsdon in both their official and individual capacities pursuant to 42 U.S.C. § 1983, claiming violations of the Fourteenth Amendment's Equal Protection Clause. Specifically, Anderson claims that the Defendants discriminated against him by treating similarly situated Caucasian officers accused of sexual harassment more favorably. During discovery, a dispute arose regarding disclosure of certain information contained in MCSD's internal affairs files. Unable to resolve the matter, Anderson filed a motion to compel which is presently before the Court. For the reasons stated below, Anderson's motion to compel is GRANTED IN PART and DENIED IN PART.

### II. Focus of Discovery Dispute.

 Anderson's motion to compel involves numerous requests for production and interrogatories.[1] Although Anderson explains that "[t]he dispute between the parties involves two categories of information" [Docket No. 33, p. 4], what is really at issue is MCSD's invocation of the deliberative process privilege and law enforcement investigatory privilege with respect to internal affairs files relating to Anderson and two alleged

---

1. Anderson seeks to compel Defendants' responses to Request for Production Nos. 1, 2, 3, 5, 6, 7, 14, 15, 16, 19, 26, 27, 31, 39 and 40, and Defendants' answers to Interrogatory Nos. 16 through 18.

similarly situated individuals.[2] Therefore, the Court need not trudge tediously through every request for production or interrogatory in dispute. Rather, resolution of whether the contested privileges apply to the facts and circumstances of this case will resolve the discovery dispute.[3]

## III. Discussion.

### A. Deliberative Process Privilege.

■ "The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir.1993), *citing NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–52, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (citations omitted). However, there are limitations to this privilege. For the privilege to apply at all, the document—or communication—must be "pre-decisional" and "deliberative." *Becker v. I.R.S.*, 34 F.3d 398, 403 (7th Cir.1994). Moreover, the privilege "may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." *Farley*, 11 F.3d at 1389.

■ The Court need not engage in this balancing process, however, because the deli-

berative process privilege does not extend to the circumstances of this case.

The privilege was fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's suit. If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination.

*In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C.Cir.1998) (citations and footnote omitted). *See also Scott v. Board of Education of the City of East Orange*, 219 F.R.D. 333, 337 (D.N.J.2004) (" 'In a civil rights action where the deliberative process of State or local officials is itself genuinely in dispute, privileges designed to shield that process from public scrutiny must yield to the overriding public policies expressed in the civil rights laws.' ") (*quoting Grossman v. Schwarz*, 125 F.R.D. 376, 381 (S.D.N.Y.1989)); *Williams v. City of Boston*, 213 F.R.D. 99, 102 (D.Mass.2003) (holding that disciplinary hearing officers' final report to police commissioner was not protected by deliberative process privilege in civil rights case against the police department); *Roberts v. Hunt*, 187 F.R.D. 71, 75 (W.D.N.Y.1999) ("conversations between the employees of the Agency and Agency investigators regarding suspected violations of the Agency's sexual harassment policy constitute factual material beyond the privilege.").

■ Moreover, the privilege "should be invoked only in the context of communica-

---

**2.** Defendants claim that Anderson's motion to compel is premature with respect to Request Nos. 19 and 27 because Anderson's counsel failed to comply with Local Rule 37.1 with respect to these two requests. [Docket No. 42, p. 2]. However, as Anderson points out, Defendants' objections to these requests also involve the deliberative process and law enforcement investigatory privileges. Accordingly, the Court considers these requests as well.

**3.** In addition to what the Court views as the main controversy regarding privileges, Anderson seeks to compel certain interrogatory answers seeking information regarding other internal

complaints, administrative charges and/or lawsuits within the past five years alleging equal protection denial, race discrimination or sex discrimination. Subsequent to Anderson's motion to compel, Defendants supplemented their answers to the disputed interrogatories. Defendants' supplementation has, at least for the moment, satisfied Anderson. [*See* Docket No. 43, p. 12] ("Plaintiff does not at this point request that Defendant engage in further review of its files based upon Interrogatory Nos. 16–18."). Accordingly, to the extent Anderson's motion seeks to compel answers to Interrogatory Nos. 16 through 18, it is DENIED AS MOOT.

tions designed to directly contribute to the formulation of *important public policy.*" *Soto v. City of Concord,* 162 F.R.D. 603, 612 (N.D.Cal.1995) (emphasis added). *See also Scott,* 219 F.R.D. at 337 ("The Privilege is properly limited to 'communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately to shield all decision-making by public officials.'") (citation omitted). Thus, as noted in *Soto,* "[b]oth the internal affairs investigations as well as the records of witness/police officer statements are of the type that would be routinely generated by Defendants," making the deliberative process privilege inapplicable. *Soto,* 162 F.R.D. at 612–13. "To extend the deliberative process privilege to a recommendation as to a particular personnel matter extends it beyond its present form to protect from disclosure what would otherwise be evidence relevant to plaintiff's complaint of discrimination." *Waters v. United States Capitol Police Board,* 216 F.R.D. 153, 163 (D.D.C.2003).

The Court agrees with the reasoning of these various jurisdictions and concludes that the deliberative process privilege is unavailable where, as here, the plaintiff alleges employment discrimination under either Title VII or 42 U.S.C. § 1983. *See Williams,* 213 F.R.D. at 102 ("where, as here, the 'decision-making process itself is the subject of the litigation,' it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information."). Therefore, the deliberative process privilege is inapplicable, and there is "no need to engage in the balancing test applied in deliberative process privilege cases." *In re Subpoena Duces Tecum,* 145 F.3d at 1425.

 However, even if the Court were to balance the competing factors typically applied in deliberative process privilege cases, the privilege would not apply because MCSD failed to meet its burden. In determining whether the deliberative process privilege applies, courts have devised a two-part inquiry: (1) "whether the government has

shown that the privilege applies to the documents [or communications] the government seeks to protect;" and (2) "[i]f the government meets its threshold burden of showing that the privilege applies, the litigant has the burden of showing that it has a particularized need for the documents." *K.L., L.F., and R.B. v. Edgar,* 964 F.Supp. 1206, 1209 (N.D.Ill.1997). *See also Indianapolis Minority Contractors Association, Inc. v. Wiley,* 1998 WL 1988826, at *9 (S.D.Ind.1998). For the government, here the MCSD, to meet its burden with respect to the first step, three requirements must be met:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.

*Edgar,* 964 F.Supp. at 1209.[4] *See also Government Suppliers Consolidating Services, Inc. v. Bayh,* 133 F.R.D. 531, 544 (S.D.Ind. 1990) (same). If these requirements are met, the Court utilizes a balancing test, weighing Anderson's need for disclosure against MCSD's need for confidentiality, considering such factors as:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is, would hinder frank and independent discussion about governmental policies and decisions.

*Id.* Considering this framework, the Court concludes that the deliberative process privilege is inapplicable to the instant matter.

---

**4.** Anderson argues that "[a]s an initial matter, the privilege is not available to a municipal agency such as MCSD." [Docket No. 33, p. 6]. While Defendants' argument to the contrary is not particularly persuasive, the Court need not

definitively decide this issue. Even assuming the deliberative process privilege is available to municipal agencies, it is not applicable in the instant matter.

■ Anderson argues that MCSD has not met its burden to demonstrate that the disputed documents fall within the deliberative process privilege because the MCSD "has not submitted an affidavit from a responsible official specifying the precise reasons for preserving the confidentiality of the documents, nor has it adequately described the content of the documents." [Docket No. 33, p. 7]. Although MCSD submitted the affidavit of Lieutenant Patrick Tompkins, Section Commander of MCSD's Internal Affairs Section, in response to the motion to compel, Anderson maintains Tompkins' affidavit falls short of establishing the privilege.[5] The Court agrees. While the MCSD met the first element in establishing its burden, i.e. the department head made a formal claim of privilege, the MCSD fails with respect to the final two elements. Tompkins' affidavit describes what Internal Affairs files contain *generally*. Tompkins neither specifically identifies what documents the MCSD is withholding, nor does he describe the "precise and certain reasons" for maintaining the confidentiality of those specific documents.[6] *See Edgar*, 964 F.Supp. at 1209. Whether the deliberative process privilege applies is an individualized inquiry. Therefore, the Court declines MCSD's invitation to establish this privilege for broad categories of documents such as "internal affairs files." MCSD failed to meet its burden of establishing that the privilege is applicable.

■ Moreover, as Anderson points out, four of the five documents the MCSD has identified appear to be statements from witnesses and, therefore, factual in nature. "The privilege does not extend to factual or objective material or to documents that the agency adopts as its position on an issue." *Edgar*, 964 F.Supp. at 1208. *See also Government Suppliers*, 133 F.R.D. at 543 ("factual material upon which the thoughts, ideas, recommendation, or opinions are based" is not privileged "unless it is so intertwined with privileged material that it cannot be easily severed."); *Barmes v. I.R.S.*, 60 F.Supp.2d 896, 901 (S.D.Ind.1998) (description of "purely factual matters" is not deliberative). Contrary to clear precedent, MCSD argues that the privilege extends to factual material as well. [*See* Docket No. 42, p. 16]. However, in support of its position, MCSD relies on Indiana case law. Such

5. On a related note, Federal Rule of Civil Procedure 26(b)(5) expressly states:

When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Thus, the time to make the showing that certain information is privileged is at the time the privilege is asserted, not months later when the matter is before the Court on a motion to compel. This requirement is to allow parties to try and resolve discovery disputes prior to Court intervention. Such procedure is in line with the letter and spirit of Local Rule 37.1, which mandates informal conferences regarding discovery disputes prior to filing formal motions. *See* S.D. Ind. L.R. 37.1. Thus, even if Tompkins' affidavit met the requirements that establish a deliberative process privilege, the affidavit arguably comes too late. *See Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D.Cal.1992) ("the party must submit, *at the time it files and serves its response to the discovery request*, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter.") (emphasis added).

6. In response to Anderson's Interrogatory No. 19, MCSD identified those documents it is withholding from production due to the deliberative process privilege. They are:

*Internal Affairs Files including* Memo, dated 2/12/02, from Sgt. Scott Wildauer to Lt. Bill Lorah, re: Sexual Harassment, C/O Lt. Aaron Anderson, Jail Division; Statement to Internal Affairs from Tammy Mathis, dated 1/24/02; Statement to Internal Affairs from Lisa McClure, date 1/18/02; Statement to Internal Affairs from Susan Donahue, dated 1/25/02; Statement to Major Tally–Sanders from David Hutson, dated 1/28/02

[Pl.'s Ex. B; Def.'s Ex. A] (emphasis added). While MCSD specifically identifies five documents within Anderson's Internal Affairs file that it maintains are privileged, it is clear that MCSD wishes to maintain secrecy as to all documents within that file. These documents were not specifically identified by MCSD. Moreover, nowhere does MCSD identify those documents it maintains are confidential within Mark Shilling's or Steven Eltzroth's Internal Affairs files. Thus, even if MCSD's interrogatory response were adequate to meet the "department head" requirement, it fails to specifically identify all documents it maintains are privileged.

reliance is misplaced. "When a claim is based on federal law, ... issues relating to privilege are governed by federal common law." *Scott v. Board of Education of the City of East Orange,* 219 F.R.D. 333, 336 (D.N.J.2004), *citing* Fed.R.Evid. 501. *See also Jones v. City of Indianapolis,* 216 F.R.D. 440, 443 (S.D.Ind.2003) (same). Therefore, even if the MCSD met its initial burden, to the extent documents contained factual information, those documents, or portions of documents, would fall outside the privilege. In short, the deliberative process privilege does not apply.

**B. Law Enforcement Investigatory Privilege.**

██ In *Jones v. City of Indianapolis,* 216 F.R.D. 440 (S.D.Ind.2003), this Court summarized the law enforcement investigatory privilege as follows:

The law enforcement investigatory privilege is "a qualified common law privilege protecting civil as well as criminal law enforcement investigatory files from civil discovery." *In re Adler, Coleman, Clearing Corp.,* 1999 WL 1747410, *3 (S.D.N.Y. 1999), *citing Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1341 (D.C.Cir.1984). *See also Hernandez v. Longini,* 1997 WL 754041, *3–4 (N.D.Ill. 1997) (law enforcement investigatory privilege arises under common law and is "incorporated under Fed.R.Civ.P. 26(b)"); *United States v. Lilly,* 185 F.R.D. 113, 115 (D.Mass.1999) ("The federal courts have recognized a qualified common-law privilege ... for law enforcement investigatory information."). The purpose of the privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation." *In re Polypropylene Carpet Antitrust Litigation,* 181 F.R.D. 680, 686–87 (N.D.Ga.1998), *quoting In re Department of Investigation,* 856 F.2d 481, 484 (2d Cir.1988). *See also United States v. Winner,* 641 F.2d 825, 831 (10th Cir.1981) ("The law enforcement investigative privilege is based primarily on the harm to law enforcement efforts which might arise from public disclosure of ... investigatory files.").

"A finding that the documents fall within the scope of the law enforcement investigatory privilege does not end the Court's analysis." *Polypropylene,* 181 F.R.D. at 688. The law enforcement investigatory privilege is not absolute. It can be overridden in appropriate cases by the need for the privileged materials. *See Dellwood Farms, Inc. v. Cargill, Inc.,* 128 F.3d 1122, 1125 (7th Cir.1997), *citing Tuite v. Henry,* 98 F.3d 1411, 1417–18 (D.C.Cir.1996). The balancing of that need—the need of the litigant who is seeking privileged investigative materials—against the harm to the government if the privilege is lifted "is a particularistic and judgment task." *Dellwood Farms,* 128 F.3d at 1125. It is therefore confided to the discretion of the district court, meaning that appellate review is deferential. *Id., citing Tuite,* 98 F.3d at 1415–16. Defendants, the party claiming the privilege, bear the burden of justifying application of the investigatory privilege. *See Doe v. Hudgins,* 175 F.R.D. 511, 514–15 (N.D.Ill.1997).

In balancing the public interest in protecting police investigations against the needs of civil rights plaintiffs, the Court will consider ten factors first announced in *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D.Pa.1973), which, "although not exhaustive, are useful in making this determination." *Tuite v. Henry,* 181 F.R.D. 175, 177 (D.D.C.1998). These factors are:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) the impact upon persons who have given information of having their identities disclosed;

(3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

(4) whether the information sought is factual data or evaluative summary;

(5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) whether the investigation has been completed;

(7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8) whether the plaintiff's suit is nonfrivolous and brought in good faith;

(9) whether the information sought is available through other discovery or from other sources; and

(10) the importance of the information sought to the plaintiff's case.

*Tuite,* 181 F.R.D. at 177, *citing Frankenhauser,* 59 F.R.D. at 344. The Court has "considerable leeway" weighing these factors in the undertaking of the essential balancing process. *Tuite,* 181 F.R.D. at 177.

*Jones,* 216 F.R.D. at 443–44.

Although the Seventh Circuit has never expressly cited to *Frankenhauser* or its factors, that court has advanced tacit approval of *Frankenhauser's* balancing test through reliance on cases that have approved its application. *See Dellwood Farms,* 128 F.3d at 1125 (acknowledging discretionary balancing test to determine whether investigatory privilege applies), *citing Tuite,* 98 F.3d at 1417–18.

■ Before turning to the *Frankenhauser* factors, the Court first notes that Anderson maintains that the law enforcement investigative privilege is unavailable in situations involving the "investigation or discipline of employees based upon their conduct with coworkers." [Docket No. 33, p. 9]. Anderson argues that "[t]here is no reason to afford law enforcement agencies a privilege not available to other public and private employers that necessarily engage in the same

types of investigations when faced with questions of employee misconduct." [Docket No. 33, pp. 9–10]. However, neither Anderson nor the Court's own research provides authority for this proposition. To the contrary, a least one court faced with a similar issue specifically applied the *Frankenhauser* factors in determining whether the privilege applied. *See Burke v. New York City Police Department,* 115 F.R.D. 220, 227–29 (S.D.N.Y.1987) (applying balancing test in 42 U.S.C. § 1983 and Title VII action involving allegations of sex discrimination in work conditions and harassment). Therefore, the Court declines Anderson's invitation to hold that the law enforcement investigatory privilege never applies to non-criminal employee misconduct.[7] Instead, that determination hinges on balancing the need of Anderson versus the harm to MCSD.

### 1. The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information.

■ With respect to this factor, Anderson argues that "MCSD cannot credibly argue that disclosure in this case will discourage citizens from providing information. All of the statements and materials identified by MCSD were given and generated by MCSD's own employees." [Docket No. 33, p. 11]. MCSD counters by pointing out that this Court has previously held that disclosure of witness testimony would have a chilling effect on citizens coming forward to assist with law enforcement investigations in the future. *See Jones,* 216 F.R.D. at 446. However, *Jones* is distinguishable on several fronts. First and foremost, it involved a criminal investigation and not, as here, an investigation relating to non-criminal disciplinary matters between employees. Moreover, as Anderson notes in reply, MCSD has not identified any "citizen statements" that it seeks to maintain confidential. Instead, it

7. Many of the same considerations supporting the conclusion that the deliberative process privilege does not apply to civil rights cases involving intent also apply to the law enforcement investigatory privilege. However, the law enforcement investigatory privilege contains additional considerations such as whether the investigation has been completed and whether disciplinary proceedings have arisen or may arise from the investigation. In certain circumstances not present here, these factors may tip the scales in favor of non-disclosure.

appears that MCSD seeks to protect the entire contents of all internal affairs files. As noted in *Jones,* such an approach is unavailing. *Jones,* 216 F.R.D. at 449 ("Defendants['] attempt to shield the 'Entire Internal Affairs File' is unavailing because it is overbroad and does not specifically state what documents within this file they seek to protect."). Those witness statements that MCSD has identified, i.e. statements of Tammy Mathis, Lisa McClure, Susan Donahue, and David Hutson, all appear to be from MCSD employees. The Court does not believe that disclosure of employee statements from an internal sexual harassment investigation will discourage citizens from giving the government information. As noted in *Burke:*

> If defendants are saying that police officers are more likely to be untruthful if they know potential plaintiffs might receive their reports than they ordinarily are when they are faced with possible departmental disciplinary action, the court does not accept their argument. The court recognizes that police department self-evaluation and remedial action do serve an important police policy, but such policy will not be hindered by the disclosure ordered here.

*Burke,* 115 F.R.D. at 228–29, *quoting Mercy v. County of Suffolk,* 93 F.R.D. 520, 522 (E.D.N.Y.1982). Accordingly, this factor weighs in favor of disclosure.

**2. The impact upon persons who have given information of having their identities disclosed.**

 MCSD argues that "[t]he potential harm to individuals who provide the police with information in having their identities revealed is not to be ignored." [Docket No. 42, p. 7], *citing Tuite v. Henry,* 181 F.R.D. at 179. This Court, citing *Tuite,* has also reached such a conclusion. *See Jones,* 216 F.R.D. at 446. However, neither *Jones* nor *Tuite* is applicable to the case at hand. For example, both cases involved criminal investigations. In *Tuite,* the court noted that a confidential informant had assisted investigators in the case. Moreover, the court concluded that "[t]he public interest in preserving the anonymity of these individuals, *whose effectiveness and lives may very*

*well be at risk,* is best served by the withholding of any and all identifying information from these reports." *Tuite,* 181 F.R.D. at 179 (emphasis added). Such concerns are not present in the case at hand. In addition, as Anderson points out, MCSD had already disclosed the identity of those individuals who gave statements in the investigation of the sexual harassment complaint against Anderson. *See Burke,* 115 F.R.D. at 229 ("since the interviewed officers' names have already been disclosed, there is no danger that disclosure of their names in the documents would have an 'impact' upon them."). Thus, the Court is hard pressed to find how this factor could weigh in MCSD's favor.

MCSD's reliance on Tompkins' affidavit is equally unpersuasive. Citing Tompkins' affidavit, MCSD maintains that the requested files "contain sensitive and confidential information, which has no bearing on Plaintiff's claims" and that "[c]itizens and fellow officers may feel intimidated by providing evidence that may implicate an officer in activity that may lead to disciplinary action." [Docket No. 42, p. 7]. The problem with these statements is that they involve generalities. The determination of whether the law enforcement investigatory privilege applies in a certain case "is a particularistic and judgmental task." *Dellwood Farms, Inc. v. Cargill, Inc.,* 128 F.3d 1122, 1125 (7th Cir.1997). Thus, sweeping conclusions that do not reference the specific factual circumstances of the instant matter are not particularly relevant or helpful to the Court's determination. In short, this factor also weighs in favor of disclosure.

**3. The degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure.**

 MCSD argues that this factor favors non-disclosure because disclosure of investigative techniques and strategies would negatively impact the department's self-critical analysis and "compromise the IA Section's ability to conduct effective investigations...." [Docket No. 42, p. 8]. Additionally, MCSD submits that "[d]isclosure of the files and the material contained therein will

significantly inhibit frank and open communication within IA due to the very real fears that such communication might be published in the media and that Section members would be harassed or retaliated against by the target of an investigation." [*Id.*]. In contrast, Anderson states that "[w]hile MCSD may have an interest in effectively investigating employee misconduct with co-workers, that interest is shared by all employers, including private employers and public agencies without law enforcement responsibilities." [Docket No. 33, p. 12]. Stated another way, Anderson claims that internal disciplinary matters, e.g. a sexual harassment investigation, is not law enforcement and therefore does not fall within the law enforcement investigatory privilege.

Anderson's point is well taken. However, while a close call, this factor weighs in MCSD's favor. The need for open and frank communications with respect to internal investigations relating to allegations of discrimination or harassment, whether preformed by a police department or a private employer, is important. Disclosure could certainly have a chilling effect on the willingness of employees to participate openly in such investigations. Accordingly, this factor weighs against disclosure.

### 4. Whether the information sought is factual data or evaluative summary.

 Typically, courts require reports containing both factual and evaluative materials to be disclosed in civil rights actions brought pursuant to 42 U.S.C. § 1983. In such cases, the evaluative material may be the best evidence available of the state of mind of the defendant and exempting the evaluative materials from discovery "might well bar jury scrutiny of highly relevant evidence which cannot be adequately de-

veloped in any other way." [*Crawford v. Dominic*, 469 F.Supp. 260, 265 (E.D.Pa. 1979)]. The rationale supporting the disclosure of this material was best described by the court in [*King v. Conde*, 121 F.R.D. 180, 192 (E.D.N.Y.1988)]. In *King*, the court rested its decision to permit disclosure of materials that included evaluative summaries on the fact that when the summaries were created "the possibility of disclosure to civil rights plaintiffs [was] probably not of great import to the officers at the time they file[d] their reports." *Id.* The court explained that "[a]n officer's incentives to hide a friend's misconduct, or to be scrupulously forthcoming lest he be disciplined for having concealed information, are probably much more closely tied to the internal investigative machinery than to the fear of civil rights litigation." *Id.* With these considerations in mind, the court concluded that disclosure would not impact the inclusion of truthful evaluative or deliberative materials in officers' reports.

*Tuite*, 181 F.R.D. at 180. The Court finds this reasoning sound. This is especially true, as explained above, given the fact the deliberative process privilege does not apply in Title VII cases in which intent is a factor. Accordingly, while the internal affairs files contain both factual and evaluative material, the Court finds that, under the facts of this case, this factor weighs in favor of disclosure.[8]

### 5. Whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question.

 MCSD acknowledges that Anderson is neither an actual nor a potential criminal

8. The Court notes, however, the difficulty in determining what material is factual and what is evaluative. As already discussed, MCSD only specifically identified five documents. Of these five, four appear to be witness statements and, thus, factual. MCSD describes the fifth document as a memo from Sgt. Wildauer to Lt. Lorah regarding the sexual harassment complaint against Anderson. This description does not indicate whether the memo "evaluates" Wildauer's

findings or whether it is simply a factual summary of the witness statements. While the Court assumes that internal affairs files do contain evaluative material, MCSD's description of what is generally found in an internal affairs file does not allow the Court to perform the required "particularistic" inquiry. *See Dellwood Farms*, 128 F.3d at 1125. MCSD, therefore, has not met its burden in establishing that the privilege applies.

defendant. Accordingly, this factor weighs in Anderson's favor.

### 6–7. Whether the investigation has been completed and whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation.

■ MCSD acknowledges that "[t]he individuals at issue are not involved in ongoing investigations." [Docket No. 42, p. 9]. In addition, any disciplinary proceedings arising out of those investigations have been completed. These factors weigh in favor of Anderson.

### 8. Whether the plaintiff's suit is non-frivolous and brought in good faith.

■ MCSD does not claim that Anderson's suit is frivolous or brought in bad faith. Thus, this factor weighs in favor of Anderson.

### 9. Whether the information sought is available through other discovery or from other sources.

■ With respect to this factor, MCSD maintains that it has "already produced personnel files and disciplinary records pertaining to the three individuals at issue" and that Anderson "could depose the decision makers and any other individuals identified in those documents." [Docket No. 42, p. 10]. In addition, MCSD states that, "[w]hile those individuals would not be able to testify regarding deliberative matters, they may be to testify to factual issues within their personal knowledge." [Docket No. 42, p. 9]. In contrast, Anderson argues that "the question of intent is the central issue in the case" and, therefore he is entitled to evidence regarding the bases of those decisions where similarly situated, non-African-American employees were allegedly treated more favorably. [Docket No. 33, pp. 13–14; Docket No. 43, pp. 7–8]. Anderson asserts that the information cannot be obtained solely from depositions because witnesses may not accurately recall what they told investigators and decision makers may not accurately recall the bases for their decisions. [Docket No. 33, p. 14].

Anderson's position is well taken and the Court finds that this factor weighs in his favor. First and foremost, "employment discrimination cases typically involve questions of intent and credibility." *Alexander v. Wisconsin Dept. of Health and Family Services*, 263 F.3d 673, 681 (7th Cir.2001). Therefore, MCSD's suggestion that Anderson can inquire about what decisions were made, i.e. factual issues, but not why they were made, i.e. intent, does not make sense in the employment discrimination context. Moreover, as explained above in detail, the deliberative process privilege does not apply in Title VII cases where the government's intent, or decision-making process, is at issue. Additionally, even MCSD's brief indicates that Anderson may not be able to obtain all of the requested information through other sources. [*See* Docket No. 42, p. 10] ("Because Plaintiff could obtain *some* of the information he seeks through other means, this factor weighs in favor of Defendants") (emphasis added). Accordingly, this factor weighs in favor of Anderson.

### 10. The importance of the information sought to the plaintiff's case.

■ The final factor in the *Frankenhauser* balancing test—the importance of the information to the plaintiff's case—has been described by courts as the most crucial. *See Tuite v. Henry*, 181 F.R.D. 175, 183 (D.D.C. 1998), and cases cited there. However, "exclusive reliance on one factor does not satisfy the 'essential balancing process'" required in determining whether the privilege applies. *Tuite v. Henry*, 98 F.3d 1411, 1418 (D.C.Cir. 1996).

With respect to this factor, MCSD does not argue that the requested information is unimportant to Anderson's case. Instead, MCSD asserts that the information can be gathered through other sources. For example, MCSD proffers that "[t]he information contained in the disciplinary and personnel files sets forth the factual basis for the actions taken and gives Plaintiff the information he seeks as to whether he was treated differently from other similarly situated indi-

568

viduals." [Docket No. 42, p. 10]. Additionally, MCSD states that Anderson "may depose the individuals involved regarding facts within their knowledge, which is far preferable than relying on hearsay statements and opinions in IA files." [*Id.*]. However, whether Anderson can get the information from other sources is a different factor under the *Frankenhauser* analysis. Moreover, as explained above, "employment discrimination cases typically involve questions of intent and credibility." *Alexander*, 263 F.3d at 681. Anderson has placed in dispute the decision-making process with respect to his discipline versus the discipline issued to those similarly situated to him. Logic and fairness dictate that he should be able to question those decision-makers based on the information they had before them at the time the decisions were made. Accordingly, this factor favors Anderson.

As the above discussion indicates, consideration of the *Frankenhauser* balancing test strongly favors disclosure in this case. Therefore, the law enforcement investigatory privilege is no bar to disclosure.[9]

## IV. Conclusion.

Based on the foregoing, the Court finds that the deliberative process and law enforcement investigatory privileges are unavailable to Defendants under the facts of this case. Accordingly, Anderson's motion to compel is GRANTED to the extent it relates to discovery requests in which Defendants objected based on these privileges. To the extent Anderson's motion seeks to compel answers to Interrogatory Nos. 16 through 18, it is DENIED AS MOOT. Defendants shall, within twenty days, supplement their discovery responses in accordance with this entry.

9. Based upon a cursory review, this decision might be viewed as a departure from the Court's earlier, unpublished Entry on Plaintiff's Motion to Compel Discovery in *Taylor v. Marion County Sheriff*, IP02–1008–C–H/K (S.D.Ind. July 18, 2003)). [Docket No. 48]. A closer examination shows otherwise. In *Taylor*, the Court noted that the law enforcement investigatory privilege might be overcome if the plaintiff in that case were able to "identify a few specific, crucial comparators," "if the IA investigations into their conduct were completed," and the information was otherwise unobtainable. Such is the case in the instant matter.